[No. B182530. Second Dist., Div. Eight. May 31, 2006.]

In re JANEE W. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Respondent, v.
JOETTA D., Appellant.

COUNSEL

Elizabeth F. Hong, under appointment by the Court of Appeal, for Appellant.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Lisa Proft, Deputy County Counsel, for Respondent.

OPINION

**RUBIN, J.**—Joetta D. appeals from the dependency court order terminating the court's jurisdiction over her daughters, J.W. and Janee W., while awarding legal and physical custody of the girls to their father, Herman W. We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

In January 2004, the Riverside County Department of Child Protective Services (DCPS) filed a petition alleging that Joetta D. (mother) had physically harmed or otherwise posed a risk of harm to her daughters, 12-year-old J.W. and 11-year-old Janee W. (Welf. & Inst. Code, § 300.)[2] The petition alleged that mother routinely hit J. and, on January 14, 2004, hit and slapped J.'s face about 10 times; was arrested that day on charges of battery, criminal threats, and child endangerment; abused drugs and alcohol; suffered from mental health problems; and placed Janee at risk due to her conduct. (§ 300, subds. (b), (j).) The petition alleged that the minors' father, Herman W. (father), was not a member of the household and failed to provide for or protect his daughters. (§ 300, subd. (b).)[3]

The petition was sustained in April 2004, and the children were placed in foster care. Reunification services were ordered for both mother and father. Riverside DCPS reports prepared for that jurisdictional hearing included statements from the children and others confirming that mother had a history of alcohol-fueled violent outbursts, physically attacked father, and bloodied J.'s nose. Mother refused to provide information, and said she would talk to only her lawyer and Jesus Christ. The children said they wanted to live with mother, but only if she got help for her problems. Father had used drugs in the past and had been in prison, but had gone through drug and alcohol counseling programs and was working as an auto mechanic. He wanted custody of the minors.

A six-month review hearing was held in September 2004. Evidence at the hearing showed that the father had completed a parenting class and participated in counseling with the children. The minors had spent weekends with father, were "excited" about the prospect of living with him, and had asked to do so. Mother still needed services and an appropriate place to live, and was unwilling to discuss or acknowledge her abusive conduct. The Riverside DCPS recommended placing the children with father and providing mother with another six months of reunification services. The Riverside dependency court found that the father's progress had been satisfactory, adopted those recommendations as its order, and set the matter for further review under

---

[1] In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733 [7 Cal.Rptr.2d 60].)

[2] We will refer to girls either individually by their first names or collectively as the children or the minors. All further section references are to the Welfare and Institutions Code.

[3] The petition also alleged that the mother was in jail and therefore unable to care for the children. (§ 300, subd. (g).) That allegation was later dismissed after the mother was released from jail.

sections 364 and 366.21.[4] It then transferred the matter to the Los Angeles County dependency court because father lived in Los Angeles. The case was officially accepted for transfer by the Los Angeles County dependency court in November 2004, and the case was continued in order to set a hearing for the father under section 364 and for the mother under section 366.21. From then on, the case was overseen by the Los Angeles County Department of Children and Family Services (DCFS).

In March 2005, DCFS submitted a report to the Los Angeles County dependency court. According to that report, mother had completed parenting education and participated in some type of therapy. A psychological evaluation of mother was reportedly completed, but had not been submitted because the evaluator was ill. In violation of her visitation orders, mother would sometimes walk the children home from school. She was living at a transitional home known as Joshua's House and was enrolled in the Arms of Grace Counseling Center. The children were still living with father and with father's mother (grandmother). Father's home was clean and safe. The children had regularly assigned chores and appeared happy to be living with father. Because the minors were living in a good environment, which included the positive influence exerted by grandmother, because the father was providing his daughters with adequate care and supervision, and because they appeared happy with that arrangement, DCFS recommended that the children remain in father's custody and that the court terminate its jurisdiction. Notice that the court intended to adopt that order was provided to the mother, and the matter was set for a hearing in April 2005.

At the April 11, 2005, dispositional hearing, the court took judicial notice of the entire file. It also heard testimony from mother, father, the children, and DCFS Social Worker Tracey Harrington. J. testified she did not want to choose between her parents because she loved them both. She felt safe on overnight visits with mother. Janee said she had no preference between her parents. Although she felt safe with mother, she admitted that she sometimes felt scared when she lived with mother. Mother denied that she had unauthorized contact with the children. She admitted to, but minimized, a recent incident where she shut a car door on father's leg. She also complained that she had received little in the way of reunification services. According to mother, she had been in constant contact with the social workers and asked them to visit her living quarters and arrange conjoint counseling. The social worker promised to get back to her, but never did. The social worker visited mother just once, right after the case was transferred to Los Angeles County.

---

[4] Section 364 applies when the dependency court takes jurisdiction of a child, but does not remove the child from the physical custody of the parent. Section 366.21 supplies the procedures for review hearings at the six-, 12-, and 18-month stages. We discuss both sections in more detail, *post.*

According to social worker Harrington, the children had a good relationship with mother and wanted to visit her. He admitted that he never contacted the person who conducted mother's psychological evaluation.

The court agreed that, absent father's presence in the case, it would not be able to find that reasonable reunification services had been offered to mother. Because the children were with father, however, the court indicated that fact was not relevant. The court found that mother continued to deny or minimize the drug and alcohol use, mental health issues, and other matters that led the court to take jurisdiction. Because the children had limited contact with mother since the case was transferred to Los Angeles County, they had no way of knowing whether mother still had the same problems. The court concluded that the children could not be safely returned to mother, and that they were safe with their father. The court also noted that 15 months had elapsed since the children were first detained. The court then found that the conditions that justified taking jurisdiction under section 300 no longer existed, terminated jurisdiction, awarded full legal and physical custody of the children to father, and allowed mother weekly visits. As a result, the case left the dependency court and was subject to jurisdiction of the family law court.

On appeal, mother contends the court erred because (1) the evidence showed there was a need for continuing jurisdiction by the dependency court, and (2) she did not receive adequate reunification services.

## DISCUSSION

### 1. *Section 361.2 Provides the Applicable Procedural Rules*

██ After the six-month review hearing, at which the children were placed with father, both the Riverside and Los Angeles County dependency courts referred to section 364 when setting future hearings and deciding this matter. Section 364 applies when a dependency court determines that jurisdiction under section 300 is appropriate, but "the child is not removed from the physical custody of his or her parent or guardian . . . ." (§ 364, subd. (a).) At the six-month review hearing, the court shall terminate its jurisdiction unless DCFS proves "that the conditions still exist which would justify initial assumption of jurisdiction under Section 300 . . . ." (§ 364, subd. (c).) Because the minors did not live with father when first detained, but were instead taken from mother's home and eventually placed with father, the dependency court erred by proceeding under section 364. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 263–264 [5 Cal.Rptr.3d 261] (*Nicholas H.*) [section 364 applies when a child is not removed from the physical custody of the parent or guardian, and has no application where a child is placed in

the home of a parent with whom the child did not previously reside after being removed from the home of the other parent]; but see *In re N. S.* (2002) 97 Cal.App.4th 167, 172 [118 Cal.Rptr.2d 259].)[5]

Instead, we believe this matter should have been determined under section 361.2, which provides that when a court assumes jurisdiction of a minor, it must determine "whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." If so, the court must place the child with that parent unless it finds that doing so poses a risk of harm to the child. (§ 361.2, subd. (a).)[6] Under that section, when the court orders removal of a child from a parent's home and determines that another parent, with whom the child did not previously reside, is available, it may choose two options. First, it may simply terminate jurisdiction and give the other parent legal and physical custody of the child. (§ 361.2, subd. (b)(1).) Second, it may have the other parent assume custody of the child, and "may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child." (§ 361.2, subd. (b)(3).) When deciding whether to terminate jurisdiction, the court must determine whether there is a need for continued supervision, not whether the conditions that justified taking jurisdiction in the first place still exist, as required under section 364. (*In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1493–1494, 1496–1498 [285 Cal.Rptr. 374] (*Sarah M.*), disapproved on other grounds by *In re Chantal S.* (1996) 13 Cal.4th 196, 204 [51 Cal.Rptr.2d 866, 913 P.2d 1075]; see § 366.21, subd. (e) [at six-month review hearing, if child was removed under section 361.2, the court shall determine whether continued supervision is still necessary and may terminate jurisdiction under that section].) Even though section 361.2, by its terms, applies when the court first takes jurisdiction of a child, its procedures can be invoked at the six-month and 12-month review hearings, as occurred here. (Cal. Rules of Court, rule 1460(c)(2), (h).)[7]

---

[5] We asked for and received supplemental briefs on this issue from the parties.

[6] We will refer to the version of section 361.2 that was in effect at the time of these proceedings. The statute has since been amended, but not in a manner that would have any effect on the issues before us. (See Historical and Statutory Notes, 73 West's Ann. Welf. & Inst. Code (2006 supp.) foll. § 361.2, pp. 137–138.)

[7] At the start of the hearing where the court terminated jurisdiction, it noted that the children had been taken from mother and placed with father, stating that "[p]ursuant to [section] 361.2, he was a previously noncustodial parent." Even so, the court never mentioned section 361.2

## 2. *The Error in Applying Section 364 Was Harmless*

Even though the dependency court's findings were phrased in the language of section 364, not section 361.2, if the evidence on the appropriate issue was undisputed and supports a finding that there is no need for continued supervision, we may affirm the order terminating jurisdiction. (*Sarah M., supra,* 233 Cal.App.3d at pp. 1498–1500.) In *Sarah M.,* the appellate court affirmed an order terminating dependency court jurisdiction after a child was taken from her mother and placed with her father. The mother claimed continuing supervision was required because there were visitation problems that caused the child to suffer emotional distress, and because the mother was concerned who would pay for conjoint therapy if it were ordered. The appellate court rejected that argument, saying it was "not a cry for continued supervision, but rather a plea for financial aid." (*Id.* at pp. 1498, 1500.) The court noted that by the time of the final hearing, when jurisdiction was terminated, it was undisputed that the child was doing fine. Because the girl "was no longer at risk as of [that hearing], she no longer needed the protection of the juvenile court. [Citation.]" (*Id.* at pp. 1499–1500.)

While most of the testimony at the dispositional hearing in this case focused on mother's progress, the DCFS reports were unambiguous in their praise for how well the minors were faring in father's custody. According to the final report, "father's residence has always appeared safe with no hazards noted. There is always food for the siblings." The home, including the room the girls shared, was clean. The girls appeared happy and helped with household chores. Neither girl exhibited mental or emotional issues. They seemed well adjusted to living with their father. The report said that father "has been providing his daughters with a safe residence and health[y] environment, as he resides with the paternal grandmother who is a supporting positive influence on the girls. During home visits . . . , the siblings have always appeared clean and well groomed. They appear happy and have stated that they like residing with their father and paternal grandmother." Based on that, DCFS recommended terminating the court's jurisdiction and leaving the girls in father's custody, because he "has provided the children with adequate care and supervision." That evidence amply supports the finding that continued supervision of the minors was no longer necessary.

Mother contends that the decision in *In re Austin P.* (2004) 118 Cal.App.4th 1124 [13 Cal.Rptr.3d 616] (*Austin P.*), requires us to disregard that evidence. The father in *Austin P.* took custody of his son under section 361.2 after he was removed from the mother's home. At the review hearing, the court refused to terminate jurisdiction, finding that continued supervision was

again, and both its ruling from the bench and its concomitant minute order referred to section 364 and its standards. All further rule references are to the California Rules of Court.

necessary for several reasons: DCFS felt it should monitor the boy's transition to father's home because they had sporadic contact during the past 10 years; DCFS wanted to monitor conflict between the parents to ensure the boy would not be blamed for the dependency; the social worker believed the boy needed both individual and conjoint therapy with each parent, which could occur only if the matter remained open; the father knew his son was being abused but had taken no steps to protect him and without continuing jurisdiction, the boy's safety could not be assured; there were conflicts between the mother, father, and father's new wife that caused the social worker some concerns; the social worker noted that the boy had previously lived with only mother and was more bonded to her than to father, and sometimes cried and said he wanted to be with the mother; and the mother was making good progress with her reunification plan. The father appealed, contending the dependency court should have terminated jurisdiction. The appellate court affirmed, finding substantial evidence to support a finding that continued supervision was necessary, thus precluding the termination of jurisdiction.

Mother contends there is similar evidence here. She is wrong. She points to evidence that father had little or no relationship with the minors and was also found to have neglected the children by not providing for them. That may have been the case when the court first assumed jurisdiction over the children, but the undisputed evidence from DCFS shows that those circumstances had completely changed by both the six-month and 12-month review hearings. Unlike *Austin P.*, even though there was evidence of a conflict between father and mother, that fact did not bother the DCFS, which apparently felt the conflict had no effect on the need for continued supervision when it recommended terminating the court's jurisdiction. In short, all the evidence before the court showed that continuing supervision of the minors was no longer required. Therefore, the order terminating jurisdiction was proper under section 361.2.

3. *The Supposed Lack of Reunification Services Does Not Require a Different Result*

At the 12-month dispositional hearing, the court said that it did not believe reasonable reunification services had been given to mother, but considered that irrelevant because the children were with father. Mother contends that by both statute and court rules, she was entitled to reasonable reunification services, requiring us to reverse the order terminating jurisdiction. (§ 366.21, subds. (f), (g)(2); rule 1461(c)(4).) We believe those provisions are inapplicable when a child is removed from the custody of one parent and placed with another under section 361.2.

■ Although subdivisions (f) and (g) of section 366.21 require the court to consider whether reasonable reunification services were ordered, those provisions refer to children removed from the custody of a parent or parents under section 361.5, which "is a generic statute addressing a basic situation in juvenile dependency actions, i.e., the removal of a child from the caretaker's custody and the goal of reunifying the child with the caretaker through the provision of reunification services. It does not, by its terms, encompass the situation of the noncustodial parent. Section 361.2 addresses the situation of the noncustodial parent and whether reunification services should be provided to that parent." (*In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856 [34 Cal.Rptr.2d 271].)

We believe section 366.21, subdivision (e) recognizes this distinction. That section begins with a lengthy discussion of the issues to be considered at a six-month hearing. Towards the end, it states: "If the child had been placed under court supervision with a previously noncustodial parent pursuant to Section 361.2, the court shall determine whether supervision is still necessary. The court may terminate supervision and transfer permanent custody to that parent, as provided for by paragraph (1) of subdivision (b) of Section 361.2." (*Ibid.*) In the next two paragraphs, the section provides: "*In all other cases,* the court shall direct that any reunification services previously ordered shall continue to be offered to the parent or legal guardian pursuant to the time periods set forth in subdivision (a) of Section 361.5, provided that the court may modify the terms and conditions of those services. [¶] If the child is not returned to his or her parent or legal guardian, the court shall determine whether reasonable services that were designed to aid the parent or legal guardian in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent or legal guardian. The court shall order that those services be initiated, continued, or terminated." (§ 366.21, subd. (e), italics added.)

■ As we read this provision, the Legislature has placed the requirement for reasonable reunification services in the class of "all other cases" that follows the requirements when a child is placed with a previously noncustodial parent under section 361.2. The same is true of rule 1461, which separately addresses the termination of jurisdiction under section 361.2 without mention of a finding concerning reasonable reunification services (rule 1461(c)(2)), but does mention the need for reasonable services in a separate section when the court does not order return of the child. (Rule 1461(c)(3).) (See *Nicholas H., supra,* 112 Cal.App.4th at pp. 266–268 [even though section 361.2 calls for review hearings under section 366, and even though section 366.21, subdivision (f) calls for a return of the child to the previously custodial parent unless a risk of detriment is found, that standard applies only when a child is placed in foster care, not when the child is placed with a previously noncustodial parent; a finding that no supervision is required under

section 361.2 is comparable to a finding that a child can safely be returned to the home of removal].) Therefore, even if reunification services are offered to the previously custodial parent, once the dependency court determines that further supervision of the children in the home of the previously noncustodial parent is not required, the failure to provide adequate reunification services to the other parent does not prevent the court from terminating jurisdiction under section 361.2. Accordingly, we need not reverse on that basis.

## DISPOSITION

For the reasons set forth above, the order terminating the dependency court's jurisdiction is affirmed.

Cooper, P. J., and Flier, J., concurred.