Filed 5/20/13  In re T.B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re T.B., a Person Coming Under the Juvenile Court Law. | B244360 (Los Angeles County Super. Ct. No. MJ20495) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>T.B.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Akemi Arakaki, Judge.  Affirmed.

Jennifer Gerard, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, T.B., appeals from the order of wardship (Welf. & Inst. Code, § 602) entered as a result of his admission he committed the felony of attempted first degree burglary, person present (Pen. Code, §§ 664, 459). The juvenile court placed T.B. at home on probation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[1]

At approximately 5:00 p.m. on March 27, 2011, Cheryl Freeman was at her home on Sorrell Avenue in Palmdale. She heard the doorbell ring and, when she looked through the "peep hole," saw T.B. and a companion, Gary K., standing on her front porch. After seeing the two juveniles, Freeman turned off her television, closed all the blinds and sat down on the couch in her living room. Freeman then saw Gary K. "violently shaking the [locked] kitchen window . . . attempting to gain entry into her [home]." At the same time, Freeman saw T.B. "crouch down and [look] into her family room . . . sliding glass door." Freeman "stared" at T.B. through the blinds on the door. When she made eye contact with him, both he and Gary K. ran from the house and jumped over the fence on the west side of Freeman's property. Freeman called the Palmdale Sheriff's Station, then got into her car and followed T.B. and Gary K. to the Kaiser Medical Center parking lot.

Palmdale Deputy Sheriff Hudson responded to Freeman's call. Before the deputy arrived at the Kaiser parking lot, an "air unit" located T.B. and Gary K. Sheriff's Deputies Fletcher and Reddy then took the two juveniles into custody and Freeman identified them as the individuals who had attempted to enter her home.

Deputy Hudson went to Freeman's residence where he determined that T.B. and Gary K. could only have entered her backyard by jumping over a locked side gate. The deputy did not, however, see any signs of attempted forced entry.

---

[1] The facts have been taken from the probation report.

2

T.B. and Gary K. were transported to the station, "booked into custody [and] cited." At the station, Deputy Hudson advised T.B. of his rights pursuant to *Miranda*.[2] After T.B. indicated that he understood his rights and was willing to waive them, he told the deputy that he thought it would be fun to play " 'ding dong ditch' " on Freeman. He then stated that Gary K. had entered Freeman's backyard to look for a tennis ball. Gary K. also waived his *Miranda* rights, but then refused to make a statement. Both T.B. and Gary K. were later released to their respective parents.

2. *Procedural history*.

On May 25, 2011, a petition filed pursuant to Welfare and Institutions Code section 602 alleged that, on or about March 27, 2011, "the crime of ATTEMPTED FIRST DEGREE BURGLARY, PERSON PRESENT, in violation of PENAL CODE [sections] 664/459, a Felony, was committed by [T.B.], who did attempt[] to enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by CHERYL FREEMAN, with the intent to commit larceny and any felony." It was further alleged pursuant to Penal Code section 462, subdivision (a) that, "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person who is convicted of a burglary of an inhabited dwelling house . . . ." Finally, it was alleged that the offense of attempted first degree burglary, person present, "is a violent felony within the meaning of Penal Code [section] 667.5[, subdivision] (c) in that another person, other than an accomplice, was present in the residence during the commission of the . . . offense." [3]

On July 11, 2011, the juvenile court continued the proceedings and referred the matter to another department for a "competency setting." T.B.'s counsel had "declare[d]

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

[3]     A previous petition had been filed on March 28, 2011 pursuant to Welfare and Institutions Code section 602. In that petition, T.B. had been charged with battery on a school employee in violation of Penal Code section 243.6, a misdemeanor. There had not yet been a dispositional hearing regarding that petition when the present petition was filed.

a doubt" as to the juvenile's competency "and [the] proceedings [were] suspended." At proceedings held on September 14, 2011, the juvenile court again suspended the matter and referred the case to another department for a "competency setting." In the meantime, T.B. remained released to his mother.

On May 10, 2012, the juvenile court continued the matter to 1:30 p.m. on May 29, 2012 for a competency hearing to be held in Department 285. After listening to the testimony of a Dr. Catherine Scarf, reading all of the reports and hearing argument from the parties, the juvenile court denied T.B.'s counsel's request to appoint another doctor and concluded T.B. was competent. The juvenile court reinstated the proceedings and, in the interim, allowed T.B. to remain released to his mother.

At proceedings held on August 17, 2012, the deputy public defender appointed to represent T.B. indicated that an agreement had been reached with regard to a disposition of the matter. T.B. had agreed to admit one count of attempted first degree burglary, person present. In exchange for his admission, T.B. would be placed at home on probation.

The prosecutor first advised T.B. that he had been charged in a petition dated May 25, 2011 with one count of Penal Code sections 664 and 459, "a felony commonly known as attempted first degree burglary person present." After T.B. indicated that he understood the charge and had consulted with his attorney regarding any defenses he might have, the prosecutor advised him of his constitutional rights. The prosecutor indicated that he had the right to "an adjudication, which is a court trial." The prosecutor continued: "It means there's a trial in front of a judge instead of a jury. At that trial the prosecutor would have . . . to prove the charges beyond a reasonable doubt. [The juvenile] would have the right to confront and cross-examine witnesses, the right to use the subpoena power of the court to subpoena witnesses on [his] own behalf, the right to present an affirmative defense, and the right to remain silent." T.B. stated that his counsel had explained his rights to him, that he understood his rights and that he was willing to "waive and give up those rights[.]"

4

The prosecutor informed T.B. that there would also be "consequences to [his] admission." In particular, if T.B. were on probation or parole in another matter, his admission would be considered a violation of that probation or parole and could lead to time in custody. In addition, the juvenile court was going to order that certain fines be paid and T.B. could be required to pay restitution to the victims in both his present and previous cases. Finally, the prosecutor indicated that T.B. would be required to provide a DNA sample pursuant to Penal Code section 296.

The prosecutor explained that the juvenile court had several options in this matter, including "home on probation, suitable placement, and camp" and that the "maximum time [he could] spend in custody on this charge [was] three years . . . ." However, due to his admission, the parties had agreed that T.B. would receive home on probation.

After T.B. indicated that he understood the agreement and was admitting the charge "freely and voluntarily," he admitted having committed "a violation of Penal Code section[s] 664-459, a felony commonly known as attempted first degree burglary, person present[.]"[4] The parties stipulated to a factual basis for the plea and the juvenile court found that T.B. had "knowingly, intelligently, understandingly and expressly waived all of his constitutional rights" and understood the "nature of the conduct and the possible consequences of his admission." The juvenile court then declared T.B. "a ward of the court pursuant to Welfare and Institutions Code section 602," indicated that his "care, custody, control and conduct [would thereby be] placed under the supervision of the Probation Department" and that, at this time, he would be "permitted to remain in the home of his mother under [certain] terms and conditions." The juvenile court read to T.B. and his mother the terms and conditions of his probation, then requested a probation report and set a court date for three months later to "see how [T.B.] [was] doing on probation." After dismissing the misdemeanor petition, the juvenile court ended the proceedings.

---

[4]     It was indicated that T.B. had made the admissions pursuant to *People v. West* (1970) 3 Cal.3d 595.

On October 1, 2012, T.B. filed a timely notice of appeal from the juvenile court's order of wardship. T.B. indicated the grounds for his appeal consisted of an "[i]mproper finding that [he] was competent despite evidence produced at competency hearing[s] [held] on February 29, 2012, and May 29, 2012" and "[a]ny other issues the appellate counsel deem[ed] relevant and necessary to appeal."

## CONTENTIONS

Initially, we note that "a minor who admits a juvenile court petition alleging a criminal offense need not secure a certificate of probable cause in order to appeal." (*People v. Turner* (1985) 171 Cal.App.3d 116, 124, fn. 4; see *In re Joseph B.* (1983) 34 Cal.3d 952, 959-960; *In re Damien V.* (2008) 163 Cal.App.4th 16, 21.) Here, in his notice of appeal, T.B. asserted the juvenile court erred when it improperly found him competent. However, a review of the record reveals the juvenile court considered the testimony of a Dr. Catherine Scarf, read all of the reports and considered each party's arguments. Under these circumstances, we may reasonably conclude substantial evidence supports the juvenile court's finding T.B. was competent. (See *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1134; see also *In re A.J.* (2013) 214 Cal.App.4th 525, 535.) There was no error.

Counsel was appointed to represent T.B. on appeal and, after examination of the record, filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed January 29, 2013, the clerk of this court advised T.B. to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. No response has been received to date.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

**DISPOSITION**

The order of wardship is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.