Filed 7/10/15  In re G.B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re G.B., a Person Coming Under the Juvenile Court Law. | D067330 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518969) |
| v. | |
| G.L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Katherine A. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Emily K. Harlan, Deputy County Counsel, for Plaintiff and Respondent.

G.L. (Mother) appeals from an order of the juvenile court making dispositional findings on a juvenile dependency petition filed by the San Diego County Health and Human Services Agency (the Agency) on behalf of her minor son, G.B. (born 2005). Mother contends substantial evidence did not support the court's removal order. She also asserts the juvenile court erred by failing to make required findings under Welfare and Institutions Code section 361.2 and improperly terminated jurisdiction. (Undesignated statutory references are to the Welfare and Institutions Code.) She seeks reversal of the juvenile court's dispositional order removing G.B. from her care and its subsequent orders terminating jurisdiction and placing G.B. with nonoffending Father. We reject her contentions and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, when G.B. was eight years old, Mother and a number of West Coast Crips gang members were arrested on federal racketeering charges. G.B. was present in the motel room during the arrest and was detained at Polinsky Children's Center (Polinsky). The Agency filed a dependency petition alleging Mother was unable to supervise and provide for G.B. due to her arrest. At the detention hearing, the juvenile court made a prima facie finding on the petition. In May 2014, the court found Father, who resided in Texas, to be G.B.'s presumed father, ordered unsupervised phone visitation between the Father and G.B. and set the matter for trial.

In June 2014, the juvenile court sustained the petition and took jurisdiction over G.B. with a true finding under section 300, subdivision (b). At a later hearing, the court ordered the Agency to conduct an Interstate Compact for the Placement of Children for

2

Father. At a hearing in September 2014, the Agency provided information to the court regarding emotional and behavioral issues that G.B. suffered. The Agency noted G.B. had been in two different placements and been detained at Polinsky three different times. At the time of the hearing, G.B. had been placed at Polinsky for over a month. In October 2014, the Agency recommended G.B. be placed with Father and that jurisdiction be terminated and exit orders be put in place.

Mother was released from jail in late October 2014. She visited G.B. almost daily at Polinsky until she moved to Northern California. After the move, she called G.B. on a daily basis. At the time of the contested disposition hearing in early December 2014, Mother remained in Northern California as she was still facing criminal court issues and was restricted in her ability to travel back to San Diego County. She submitted on G.B.'s placement with Father. The court declared G.B. a dependent, ordered him removed from Mother's care, placed him with Father in Texas and gave Mother supervised visitation. G.B.'s counsel asked that the juvenile court defer closing the case for a couple of weeks in order to effect G.B.'s transition to Father's custody and allow the parties to work out custody orders.

At the continued disposition hearing in late December, G.B.'s counsel reported that G.B. "likes living in Texas" for now and had a great Christmas. Although G.B. was struggling to adjust to a new school, he had been there for only two days. Mother objected to the juvenile court terminating jurisdiction and requested to continue the hearing for at least a month. Mother believed G.B. was struggling with the transition into his Father's care and she wanted the juvenile court to continue to monitor the situation by

3

not terminating jurisdiction. The juvenile court determined it was not appropriate to maintain dependency jurisdiction and "let the case linger on" for the reasons cited by Mother. The juvenile court believed that family court was the appropriate forum for those issues once G.B. had spent more time in his placement with Father. It reaffirmed G.B.'s placement with Father, signed the custody and visitation orders, ordered that the final orders be forwarded to the family court and terminated dependency jurisdiction over G.B. under section 361.2, subdivision (b)(1). Mother timely appealed

## DISCUSSION

### I. *Removal Order*

Mother asserts substantial evidence did not support the juvenile court's removal of G.B. as the Agency failed to prove there was a continuing substantial danger to him in her care and that providing family maintenance services would have been a less intrusive disposition alternative. Assuming we reject this argument, Mother asserts reasonable efforts were not made to keep G.B. in her care. The Agency contends Mother forfeited these arguments when she submitted on the Agency's recommendation to place G.B. with Father at the early December disposition hearing. Mother claims she preserved her arguments raised on appeal through her request that G.B. be placed with her combined with her statements made at the continued disposition hearing in late December. Assuming she forfeited these issues, she asserts we should nonetheless exercise our discretion to review them on their merits. Assuming Mother forfeited these arguments, we exercise our discretion to consider them on their merits.

4

Mother contends substantial evidence did not support the juvenile court's removal of G.B. as the Agency failed to prove there was a continuing substantial danger to him in her care and that providing family maintenance services would have been a less intrusive alternative disposition. We disagree.

Generally, a dependent child will not be removed from the home without clear and convincing evidence the child cannot safely remain there. (§ 361, subd. (c)(1).) Although the bias of the statute is on family preservation, not removal (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146), " ' "[t]he parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]' " (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.) The juvenile court's jurisdictional findings represent "prima facie evidence the child cannot safely remain in the home." (*In re Hailey T.*, at p. 146.) Although the juvenile court's findings must be made on clear and convincing evidence, "[o]n review, we employ the substantial evidence test, however bearing in mind the heightened burden of proof." (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) We consider the entire record to determine whether substantial evidence supports the juvenile court's findings. (*Ibid.*)

Based on this record, the juvenile court could reasonably find G.B.'s welfare required his removal from Mother. As Mother points out, it was undisputed that G.B. was very bonded to her and wanted to return to her care. These facts, however, are not directly relevant to whether substantial evidence supported the juvenile court's

5

determination that removal of G.B. from Mother's custody was necessary for G.B.'s safety. On this point, Mother is silent.

Mother lived in motels, denied any criminal involvement and claimed she had been arrested based on her relationship with her boyfriend. Although she dated her boyfriend for a year, she claimed to have no knowledge of his involvement in any criminal activities. The federal complaint, however, indicated that police intercepted a telephone call where the boyfriend noted that Mother sold drugs for the criminal operation. The juvenile court could appropriately consider Mother's level of denial when determining the risk to G.B. if he were to be placed with her. (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["[R]ecogniz[ing] that denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision."].)

Mother's past conduct is a good predictor of her future behavior. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) G.B. reported that he had seen the "green stuff" and "white stuff" in a nightstand and that Mother smokes the "green stuff." Mother would leave when he came home from school and, when she came back, would fall asleep even though he had asked her for help with his homework. Although she had been released from incarceration by the time of the disposition hearing, nothing in the records suggested she had a place to live, had ended the relationship with her boyfriend or was no longer using illegal substances. The juvenile court could reasonably conclude Mother's admitted marijuana use since the age of 15 and G.B.'s easy access to illegal substances reflected a continuing inability to ensure G.B.'s safety. (*In re Rocco M.* (1991) 1

6

Cal.App.4th 814, 825 [juvenile court "is entitled to infer that [11-year-old] child . . . is subjected to a substantial risk of serious physical harm when he or she is placed in an environment allowing access to drugs, with nothing to prevent him from succumbing to the temptation to ingest them"].)

We reject Mother's suggestion that G.B. could have been safely maintained in her care under family maintenance services given the representations of counsel and the maternal grandmother that Mother was located in Northern California, was restricted in her ability to travel to back to San Diego County and criminal charges against her had not yet been resolved. Nor is there evidence in the record that G.B. could have been placed in Mother's custody at a sober living house or a drug treatment facility. Additionally, the maternal grandmother represented to the court that Mother was not due back in court until 2016, which suggested to the court that Mother was in some type of program.

We conclude that the evidence was sufficient to demonstrate a substantial danger to G.B.'s physical health, safety, protection, or physical or emotional well-being existed if he remained in Mother's custody and there were no reasonable means of protecting G.B. short of removing him from Mother.

Mother also asserts reasonable efforts were not made to keep G.B. in her care. We reject this assertion.

Mother was released from jail in late October 2014 and requested "potential" placement of G.B. with her at the pretrial settlement conference in November 2014 where counsel represented that she was looking into residential programs where G.B. could stay with her. At the disposition hearing in early December, however, Mother was still facing

7

future criminal proceedings and submitted on the recommendation that G.B. be placed with Father. At the continued disposition hearing in late December, Mother provided no update on her living arrangements and did not request that G.B. be placed with her. On this record, the court could have reasonably concluded that Mother lacked the desire or capability to care for G.B.

## II. *Termination and Exit Orders*

Mother asserts the juvenile court erred when it terminated jurisdiction after placing G.B. with Father because it: (1) failed to make required findings under section 361.2, subdivision (c) and the lack of required findings was not harmless error; (2) improperly terminated jurisdiction despite substantial evidence showing a need for continuing jurisdiction to monitor G.B.'s placement with Father; and (3) abused its discretion when it issued exit orders awarding Father physical custody concurrently upon its termination of jurisdiction. As we shall explain, we reject these contentions.

Subdivision (a) of section 361.2 requires the court to place a child with a nonoffending parent if that parent requests custody unless it determines "placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." If a child is placed with the previously noncustodial parent, the court then "decides whether there is a need for ongoing supervision. If there is no such need, the court terminates jurisdiction and grants that parent sole legal and physical custody." (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1135.)

If the juvenile court gives custody to the nonoffending parent it may (1) terminate jurisdiction, (2) retain jurisdiction and order a home visit, or (3) retain jurisdiction and

8

provide reunification services to one or both parents. (§ 361.2, subd. (b).) Subdivision (c) of section 361.2, requires findings, either in writing or orally on the record, as to the basis for the juvenile court's determination under subdivisions (a) and (b).

As a preliminary matter, county counsel asserts Mother forfeited any error regarding the juvenile court's articulation of its findings under subdivision (c) of section 361.2 by failing to raise this issue below. Our review of the record shows that when the juvenile court ordered G.B. removed from Mother's custody, it adopted the findings of the social worker's report, including the finding that placement with Father would not be detrimental. At the continued disposition hearing later that month, Father noted that the court previously found it would not be detrimental to have G.B. placed with him and asked the court to terminate jurisdiction. County counsel and G.B.'s counsel agreed. Although Mother objected to termination of jurisdiction, she never complained about the adequacy of the juvenile court's findings and thus forfeited any error.

Even absent the forfeiture, the juvenile court's failure to explain the basis for its finding is reversible error only if the error "resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) Meaning " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078.)

Mother contends that had the juvenile court complied with section 361.2, subdivision (c), it would have answered the question differently whether to terminate its jurisdiction. Mother notes that G.B. had lived with Father for only 16 days at that point and his ability to care for G.B. was unknown. She also complains the court failed to take

9

into account Father's criminal history, G.B.'s significant behavioral issues and great bond with Mother. We disagree.

Father requested custody and the court was required to make that placement unless it found the placement would be detrimental to G.B. (§ 361.2, subd. (a).) Mother does not challenge the juvenile court's finding of no detriment. Upon making this placement, the juvenile court had three options: (1) terminate jurisdiction, (2) retain jurisdiction and order a home visit, or (3) retain jurisdiction and provide reunification services. (§ 361.2, subd. (b).) The determination whether to terminate juvenile court jurisdiction is reviewed for an abuse of discretion, and the factual question of whether continued court supervision is necessary is reviewed for substantial evidence. (*In re A.J.* (2013) 214 Cal.App.4th 525, 535, fn. 7.)

Here, there was no abuse of discretion in terminating juvenile court jurisdiction and substantial evidence supported the determination that continuing court supervision was not necessary. Father has housing and a good job earning a decent salary with health benefits. Although Father had a number of arrests, the most recent being in 2008 and 2010, he suffered only two convictions. He reported being more mature and in control of his life with the goal of having a happy home. The paternal grandmother reported that Father had made lots of changes in his life, was eager to care for G.B. and she had no concerns about his ability to care for G.B. Father's ex-wife described him as "a good father that loves his children." She reported that Father used to drink, which led to problems, but that he no longer drinks and is "a changed person." Father planned on

10

maintaining connection with maternal and paternal family members by visiting and phone calls.

An addendum report prepared 16 days after G.B.'s placement with Father noted that G.B. attended two days of school before beginning winter break. Although G.B. did not like his first day of school, after the second day he had made friends, liked the school and looked forward to returning after the winter break. Father had located two options for afterschool childcare, identified a therapist to see G.B. and enlisted a school counselor to check on G.B. At the continued hearing, G.B.'s counsel reported that her investigator had spoken to G.B. with G.B. stating "for now he likes living in Texas" and had "a great Christmas." Although there were some adjustment issues, Father was trying to set up more structure for G.B.

This evidence supported the juvenile court's termination of jurisdiction and Mother presented no affirmative evidence to support her request for continued jurisdiction. Nor did she raise Father's criminal history, G.B.'s behavioral issues or her bond with G.B. at the dispositional hearing as reasons for continuing jurisdiction. Rather, the juvenile court noted how impressed it was by Father's preparations to have G.B. with him. There is no reason to suspect the juvenile court would have changed its opinions had it been required to articulate more reasons for its decision.

Mother also contends that substantial evidence revealed a need for continuing jurisdiction and the court improperly terminated jurisdiction. We disagree that the record contains evidence showing a need for continuing jurisdiction. Nonetheless, even if such evidence exists the question is whether sufficient evidence supported the juvenile court's

11

contrary conclusion that continued supervision was not necessary. As noted above, ample evidence supported the contrary conclusion that supervision was no longer necessary. Accordingly, we find no abuse of discretion in the court's termination of jurisdiction. Because the juvenile court properly terminated jurisdiction, we reject Mother's final contention that the court abused its discretion when it awarded physical custody to Father in its exit orders issued concurrently upon its termination of jurisdiction. Simply put, because G.B. was no longer at risk, he no longer needed the protection of the juvenile court. (*In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1500, overruled on other grounds in *In re Chantel S.* (1996) 13 Cal.4th 196, 204.) Moreover, Mother's parental rights remained intact and, if necessary, the family court has the ability to modify the custody orders. (§ 361.2, subd. (b)(1); *In re Sarah M.*, at p. 1494.)

## DISPOSITION

The orders are affirmed.

McINTYRE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

12