Filed 2/2/16  In re Y.I. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Y.I., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D068511 |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1228) |
| v. | |
| ANGEL M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Donal B. Donnelly, Judge.  (Judge of the Imperial Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part, reversed in part and remanded with directions.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Terence M. Chucas, under appointment by the Court of Appeal, for Minor.

Angel M., the noncustodial father of minor Y.I., appeals from the juvenile court's dispositional order placing Y.I. in foster care rather than with Angel. We agree with Angel that there was insufficient evidence that placement with him would be detrimental to Y.I.'s safety, protection or physical or emotional well-being under Welfare and Institutions Code section 361.2, subdivision (a).[1] Therefore, we reverse the detriment finding and remand for a new disposition hearing.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2015, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition under section 300, subdivision (a) alleging that Z.I., the mother and custodial parent of seven-year-old Y.I., had inflicted excessive discipline and physical abuse on Y.I. Y.I. was detained in a foster home.

Angel told the Agency he lived in New Jersey but spent time in Florida. He reported having minimal contact with Y.I. over the past year and having last spoken with Y.I. on the phone about a month before. Angel stated he had been concerned previously about Z.I.'s physical abuse when he saw a bruise on Y.I.'s buttocks and a welt on Y.I.'s leg when Y.I. was two years old.

---

1      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Angel appeared telephonically at the detention hearing, stating he lived in New Jersey. The court ordered the Agency to provide voluntary services to Angel and Z.I. and interview Y.I. regarding his relationship with Angel. The court deferred ruling on paternity and, noting Angel remained an alleged father, denied him visitation.

In May 2015, the foster parent asked Y.I. to be removed from her home because he fought with the other children, hit, yelled and screamed, and acted defiantly. Y.I.'s school reported that since his detention, he had exhibited troubled behavior: he acted defiantly, shut down, hit and kicked his teacher, and ripped a teacher's blouse. The school reported Y.I. was not learning because he required full-time supervision and was not spending time in the classroom. Y.I. was suspended from school three separate times in May 2015 after attacking a teacher and exhibiting behavioral problems. He was moved from foster care to Polinsky Children's Center (Polinsky) and pulled from his school for the remainder of the school year to avoid expulsion.

On May 29, 2015, the juvenile court granted Angel presumed father status under Family Code section 7611, subdivision (d). The court ordered supervised phone or video visits for Angel and supervised in-person visits if Angel were to come to San Diego, with discretion for the Agency to permit unsupervised phone or in-person visits. Although Angel sought custody, the court deferred ruling on that issue.

Meanwhile Y.I.'s behavioral problems continued. In June 2015, Y.I. tried to walk out of Polinsky. He attempted to stab a staff member with a pen, threw things at her, kicked her, followed her, and hit her. He made sexual and racial comments to three Polinsky staff members, behaved disrespectfully, and did not follow instructions.

3

The court held a jurisdictional and dispositional hearing on June 19, 2015. The parents waived their rights to a trial on jurisdiction, and the court entered a true finding on the petition. Turning to disposition, Angel asked the court for custody of Y.I. under section 361.2, subdivision (a). The court received into evidence the Agency's reports from April, May, and June and the father's parentage inquiry; the court also heard testimony from Angel and the social worker. [2]

Angel declined when the court asked if he wanted a continuance. The court acknowledged lacking the information it needed "to make a well-informed, rational, and legally justifiable decision" but proceeded to find detriment under section 361.2, subdivision (a), so as to prevent placement with Angel. The court found that evidence regarding Angel's past criminal and child welfare histories in Florida could not establish detriment by clear and convincing evidence. Instead, the court found detriment based on the potential emotional harm to Y.I. if he were placed with Angel in New Jersey. The court determined Y.I.'s behavior was deteriorating and that uprooting him from California to live with Angel, with whom he had had little contact, would be detrimental. The court also found detriment based on the lack of information regarding Angel's living environment in New Jersey.

The court ordered Y.I. to be removed from Z.I.'s custody (§ 361, subd. (c)) and held, by clear and convincing evidence, that it would be detrimental under section 361.2, subdivision (a) to place Y.I. in Angel's custody, with or without services. The court

---

[2]    To avoid repetition, we will review the evidence in the discussion section.

directed the Agency to initiate an investigation through the Interstate Compact on Placement of Children (Fam. Code, § 7900 et seq.) or alternative means to evaluate Angel's home environment in New Jersey. The court ordered Y.I. detained at Polinsky pending placement in a foster home and ordered reunification services and supervised visitation for the parents. Angel's visitation was to be by telephone, in writing, or in person in San Diego. The court gave the Agency discretion to lift the supervision requirement with notice to Y.I.'s counsel and discretion to begin a 60-day trial visit with either parent with the advance concurrence of Y.I.'s counsel.

Angel filed a timely notice of appeal.

## DISCUSSION

Angel contends there is not substantial evidence to support the juvenile court's finding of detriment under section 361.2, subdivision (a) so as to deny placement with him. In response, the Agency contends the juvenile court properly found detriment under section 361.2, subdivision (a), based on the potential emotional harm to Y.I. if he were to be uprooted from California and sent to live with Angel in New Jersey. We conclude there is not substantial evidence to support the juvenile court's finding of detriment under section 361.2, subdivision (a) and remand for a new dispositional hearing.

### I. *Legal Principles*

Section 361.2, subdivision (a) provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume

5

custody of the child. If that [noncustodial] parent requests custody, the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Italics added.) Section 361.2, subdivision (a) evidences "the Legislative preference for placement with [the noncustodial] parent." (*In re Austin P*. (2004) 118 Cal.App.4th 1124, 1132.) Courts must make express findings, either in writing or on the record, reflecting the basis for the detriment finding. (§ 361.2, subd. (c).)

As the party opposing placement with the noncustodial parent, the Agency bore the burden before the juvenile court "to show by clear and convincing evidence that the child will be harmed if [Angel were] given custody." (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1402 (*C.M.*); see *In re Isayah C*. (2004) 118 Cal.App.4th 684, 700; *In re John M.* (2006) 141 Cal.App.4th 1564, 1569-1570 (*John M.*).) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262 (*Patrick S.*).)

On appeal, "[w]e review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that placement would be detrimental to the child." (*Patrick S., supra,* 218 Cal.App.4th at p. 1262; see *In re Luke M*. (2003) 107 Cal.App.4th 1412, 1426 (*Luke M.*).) Our role on review for substantial evidence is limited. We do not reweigh evidence or reassess the credibility of witnesses; instead, we review the record for evidence of reasonable, credible and solid value such that a

reasonable trier of fact could find as the juvenile court did. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979 (*K.B.*).)

## II. *Analysis*

The juvenile court rested its finding of detriment under section 361.2, subdivision (a) on two factors: the lack of information regarding Angel's New Jersey living environment, and the potential emotional harm to Y.I. if he were to be uprooted from Polinsky, in light of his deteriorating behavior. As we explain, there is no substantial evidence supporting a finding of detriment under either ground. The limited evidence regarding Angel's prior criminal and child dependency histories in Florida, considered and rejected by the juvenile court, does not change this conclusion.

### A. *Lack of Information about Angel's Living Environment*

Angel testified that since his release from prison in 2014, he lived in New Jersey with his girlfriend. They lived on the third floor of a home owned by his girlfriend's mother; his girlfriend's mother lived on the second floor, and a family friend lived on the first floor. Angel traveled to Florida "[p]robably twice a year" for "[p]robably a week or two" in connection with his work as a music engineer and promoter for artists. He was looking for work in New Jersey. Angel testified he had an aunt and cousins in New Jersey who lived nearby and that there were good schools near his home.

The juvenile court stated it had no reason to disbelieve Angel's testimony but gave it little weight, absent corroborating information about his living environment. The court stated it lacked information regarding basic matters of food, clothing, shelter and daycare; health, safety and welfare; and the emotional, educational and developmental support Y.I.

7

would receive from Angel, Angel's live-in girlfriend, and Angel's relatives in New Jersey. Absent this basic information, the court found Y.I. would face detriment under section 361.2, subdivision (a) if he were placed with Angel.

As Angel argues and the Agency concedes, a lack of information about the living environment in New Jersey does not constitute substantial evidence that could support a finding of detriment under section 361.2, subdivision (a). *John M.* rejected a similar argument, concluding a paucity of information about an out-of-state father, who was essentially an " 'unknown entity,' " was not substantial evidence supporting a finding of detriment. (*John M., supra,* 141 Cal.App.4th at pp. 1568, 1570.) Here, although the juvenile court raised important questions about Angel's relatives and girlfriend in New Jersey, the lack of information responsive to these questions is not substantial evidence that would allow a reasonable trier of fact to find detriment under section 361.2, subdivision (a) by clear and convincing evidence.

B. *Potential Emotional Harm to Y.I.*

The juvenile court found Y.I.'s behavior was deteriorating at Polinsky. The court acknowledged it was unclear exactly why Y.I.'s behavior was getting worse, stating it "could simply be the situation at the shelter itself"; "more deep-seated problems"; or "separation anxiety from the mother." There were no therapeutic evaluations of Y.I. to evaluate the root cause of Y.I.'s behavioral difficulties. Nevertheless, the court credited the Agency's evidence that during one supervised visit, Y.I. brought a potted plant for Z.I. On this basis, the court concluded that separation from Z.I. was the cause. In view of Y.I.'s worsening emotional state, the court concluded based on "basic common sense"

8

and "life experience" that Y.I. potentially would face emotional harm if he were uprooted from Polinsky, flown across the country, and placed in a new home with a father with whom he had had very little contact.

The court's hypothesis as to potential emotional harm to Y.I. is not substantial evidence that would support a finding of detriment under section 361.2, subdivision (a) by clear and convincing evidence. Although Y.I.'s behavior was deteriorating at Polinsky, the court noted the cause was unclear, and no therapeutic evaluations had been done. The court relied on evidence that Y.I. brought Z.I. a potted plant during one supervised visit. However, the court did not make any findings that Y.I. shared an unusually strong bond with Z.I., such that moving to New Jersey would have a "devastating emotional impact." (*Luke M., supra,* 107 Cal.App.4th at p. 1426.)[3] Although the social worker testified that Y.I. seemed bonded to Z.I., the court did not make any *findings* to that effect. (§ 361.2, subd. (c); compare *Luke M.,* at p. 1426 [minors' unusually strong bond with half siblings supported finding that move to Ohio would be detrimental] with *K.B., supra,* 239 Cal.App.4th at p. 980 [although child loved his maternal family, no facts to suggest moving to Virginia presented a high probability of devastating emotional impact].) While the juvenile court appropriately considered Y.I.'s preference for living with his mother (*Patrick S., supra,* 218 Cal.App.4th at

---

3    We disregard the discussion in Angel's opening brief concerning the "three phases in the cycle of abuse," material that was not before the juvenile court.

p. 1265), on its own, a "seven-year-old child's preference is not clear and convincing evidence of emotional detriment." (*K.B.,* at p. 980.)[4]

The court found Y.I. had little prior contact with Angel.[5] However, "a lack of contact between the child and the nonoffending noncustodial parent, alone, is not a basis for finding detriment." (*K.B., supra,* 239 Cal.App.4th at p. 981; see *John M., supra,* 141 Cal.App.4th at p. 1568 [years of no contact with out-of-state father did not support juvenile court's detriment finding]; *In re Abram L.* (2013) 219 Cal.App.4th 452, 464 [alleged lack of relationship with noncustodial parent not sufficient to support a finding of detriment] (*Abram L.*).) Neither Y.I.'s understandable desire to continue living with his maternal family in the only home he remembers, nor his lack of a close relationship with Angel, was sufficient to constitute substantial evidence of "the high level of detriment" required under section 361.2, subdivision (a). (*C.M., supra,* 232 Cal.App.4th at p. 1403.) Although the juvenile court found Y.I.'s behavior was worsening, it made no findings that Angel would be unwilling or unable to obtain the recommended services. (*John M., supra,* 141 Cal.App.4th at pp. 1570-1571 [fact that minor was troubled and in need of therapeutic services did not support a finding of detriment absent evidence the

---

4     Contrary to Angel's assertion, the record does not reflect any statement by Y.I. that he wished to "go to [Angel]'s home."

5     The social worker testified Y.I. did not remember ever living with Angel. Y.I. remembered visiting Angel "a long time ago." He said he used to talk to him on the phone but had not done so in a while. He had no memories of any shared experiences with Angel. Angel testified having last seen Y.I. in February 2011, before Angel went to prison in Florida; he had not seen Y.I. in person since his release in 2014. He stated he spoke with Y.I. frequently by phone and videoconference.

10

noncustodial, out-of-state father was unable to meet the child's special needs]; *Patrick S., supra,* 218 Cal.App.4th at pp. 1263, 1264 ["P.S.'s anxiety and diagnosis of adjustment order, unspecified, does not support a detriment finding without a showing that his father would not be willing or able to obtain recommended therapeutic services for him."].)

In finding detriment on the basis of potential emotional harm to Y.I., the court relied on "basic common sense" and "life experience" to conclude it would be detrimental for this child to move across the country. However, a finding of detriment to the " 'emotional well-being of the child' " under section 361.2, subdivision (a) must be made by clear and convincing evidence—i.e., evidence "so clear as to leave no substantial doubt." (*Patrick S., supra,* 218 Cal.App.4th at p. 1262.) Here, there is no substantial evidence upon which a reasonable trier of fact could find detriment under that standard. (*In re H.B.* (2008) 161 Cal.App.4th 115, 120 ["A judgment is not supported by substantial evidence if it is based solely upon unreasonable inferences, speculation or conjecture."].)[6]

C. *Angel's Criminal and Child Welfare Histories In Florida*

The Agency argues Angel's criminal and dependency histories in Florida may be considered as part of the totality of information supporting the juvenile court's detriment

---

[6] Because we conclude substantial evidence of detriment is lacking, we need not consider Angel's arguments that the juvenile court should have continued the disposition hearing sua sponte, or that the juvenile court erroneously shifted the burden of proof to require Angel to prove the absence of detriment. We note, however, that the record reflects the juvenile court repeatedly stated the correct standard: the Agency bore the burden of establishing, by clear and convincing evidence, that Y.I. would face detriment were he to be placed with Angel. (§ 361.2, subd. (a); *C.M., supra,* 232 Cal.App.4th at p. 1402.)

11

finding. We disagree. As we explain, because the juvenile court did not credit this evidence in making its detriment finding, we exclude it on appellate review.

During the disposition hearing, the juvenile court received evidence regarding Angel's past criminal and child welfare histories in Florida. Angel had been arrested in Florida four times for aggravated assault with a deadly weapon. He was convicted of misdemeanor aggravated assault with a deadly weapon in 2011 and was incarcerated until May 2014. At the time of the disposition hearing, Angel had an outstanding Florida arrest warrant for driving with a suspended or revoked license.

Angel also had a past child welfare history in Florida, with three separate referrals. The first referral, in January 2007, occurred about six months before Y.I. was born; it alleged there was no parent to care for an unidentified child. Angel and Z.I. were both incarcerated; Angel had been arrested for "disorderly conduct against his now ex-landlord due to being evicted." The disposition of the 2007 referral is unknown. The second and third referrals, in October 2010 and January 2011, alleged Angel left baby Y.I. alone and inadequately supervised. The latter referrals were found to be "not substantiated," and Z.I. and Angel refused voluntary services.[7]

---

[7]    The record does not explain the meaning of "not substantiated." In California, a " '[s]ubstantiated report' means a report that is determined by the investigator . . . to constitute child abuse or neglect . . . based upon evidence that makes it more likely than not that child abuse or neglect . . . occurred." (Pen. Code, § 11165.12, subd. (b).) An " '[i]nconclusive report' means a report that is determined by the investigator . . . not to be unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (*Id*., subd. (c).) An " '[u]nfounded report' means a report that is determined by the investigator . . . to be false,

The juvenile court did not credit the evidence of Angel's criminal or child welfare histories in Florida in finding detriment. The court noted that the facts underlying Angel's charges were unknown, and the court could not determine whether the offenses involved "the kind of force or violence that would spill over to children within [the] father's home[.]" Likewise, there was insufficient information about the Florida dependency referrals to support a finding of detriment. The court noted it lacked information regarding what transpired and whether Angel did anything to precipitate the referrals. Moreover, the court found Angel's failure to participate in services in the Florida dependency actions was not relevant absent evidence he had been ordered to participate in services or offered such services.

The Agency's reference to Angel's past criminal and dependency histories in Florida is unavailing. Because the juvenile court did not credit this evidence, we do not consider it on appellate review. (*In re I.J.* (2013) 56 Cal.4th 766, 773 [on review for substantial evidence, " ' "[w]e do not reweigh the evidence or exercise independent judgment" ' "]; *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 374 [where two or more inferences may be drawn, "the reviewing court has no power to substitute its deductions for those of the fact finder"].)

IV. CONCLUSION

In sum, there is no substantial evidence that would allow a reasonable trier of fact to find detriment under section 361.2, subdivision (a) by clear and convincing evidence.

to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect . . . ." (*Id.*, subd. (a).)

13

Section 361.2, subdivision (c) requires a court to make express findings, either in writing or on the record, for the basis of its determination under subdivision (a). Where, as here, the juvenile court fails to make express findings that support a finding of detriment, "it is inappropriate to make implied findings." (*Abram L., supra,* 219 Cal.App.4th at p. 462.)[8] Therefore, we remand the cause to the trial court for a new disposition hearing on the issue of placement of Y.I. with Angel under section 361.2, subdivision (a). At the disposition hearing following our remand, the juvenile court is directed to make express findings to support a detriment finding by clear and convincing evidence. On remand, the court may, of course, take into account circumstances and events that have taken place subsequent to the disposition hearing on June 19, 2015.

## DISPOSITION

The detriment finding is reversed, and the matter is remanded to the juvenile court with directions to hold a new dispositional hearing on the issue of placement of Y.I. with Angel under section 361.2, subdivision (a), in a manner consistent with this opinion. On remand, the court may consider new evidence or changed circumstances since the

---

[8] "Ordinarily, of course, appellate courts will indulge all reasonable inferences favorable to the judgment. But this familiar doctrine becomes potentially subversive where the Legislature requires the trial court to make an express finding. Such a requirement may be deprived of all force if appellate courts feel free to infer a supporting finding where the trial court has left the record silent. For that reason the doctrine of implied findings may be given limited scope where an express finding is required." (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078.)

pendency of this appeal.  In all other respects, the dispositional findings and orders are affirmed.

O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

IRION, J.