13 Cal.Rptr.3d 616 (2004)
118 Cal.App.4th 1124
In re AUSTIN P., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
N.B., Defendant and Appellant.
No. D043560.
Court of Appeal, Fourth District, Division One.
May 21, 2004.
Rehearing Denied June 14, 2004.
Review Denied July 28, 2004.
*617 Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.
*618 John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Christa Baxter, Deputy County Counsel, for Plaintiff and Respondent.
Suzanne F. Evans, San Diego, under appointment by the Court of Appeal, for Minor.
AARON, J.
N.B. (Father) appeals an order placing his son, Austin P., with him under Welfare and Institutions Code section 361.2,[1] but not terminating the court's jurisdiction. Father asserts the court abused its discretion by not giving him full legal and physical custody of Austin and terminating jurisdiction absent a finding that it would be detrimental to Austin do so. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND
In August 2003, the San Diego County Health and Human Services Agency (the Agency) removed nine-year-old Austin from the custody of his mother, D.P. (Mother), and filed a section 300 petition on his behalf. The petition alleged Mother used drugs to excess and was diagnosed with polysubstance dependence, rendering her unable to care for the child.
Father appeared at the detention hearing and was declared Austin's presumed father. Austin was later detained with him.
In September 2003, the court made a true finding on the petition. Two months later, the court declared Austin to be a dependent, removed him from Mother's custody, and ordered the parents to comply with the case plan. The court found Father was a nonoffending noncustodial parent who wanted custody, and placed Austin with him and his wife, Rachel B. However, despite Father's request that the court terminate its jurisdiction and order that Father be Austin's sole legal and physical custodian, the court continued its jurisdiction over the child.

DISCUSSION

I
Father asserts that he was presumptively entitled to custody under section 361.2, subdivision (a), absent a finding of detriment. We presume Father means he was entitled to sole legal and physical custody. The Agency responds that under section 361.2, subdivision (a), Father was entitled only to have Austin placed with him in the absence of a detriment finding. The Agency apparently defines such placement as temporary physical custody. We agree with the Agency that section 361.2, subdivision (a) requires that the court place the child in the temporary physical custody of the nonoffending noncustodial parent if doing so will not be detrimental to the child, but that the court may not terminate jurisdiction until it analyzes whether ongoing supervision of the child is necessary.
We begin our analysis with a brief overview of the statutory scheme. Once a section 300 petition is filed, the court first determines whether a child is a person described by section 300. If the court finds the child is such a person, it takes jurisdiction over the child. (§ 300.) The court then considers whether the child should be declared a dependent. (§§ 358, subd. (a), 360.) If the child is declared a dependent, the court considers whether he or she will be at substantial risk of harm if *619 left in the custody of the parent. (§ 361.) If there is a substantial risk of harm, the court removes the child from parental custody. (§ 361, subd. (c)(1).)
As directed by section 361.2, subdivision (a)  the subdivision at issue here  the court then considers whether the child has a nonoffending noncustodial parent who wants "custody." That subdivision provides:
"When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional wellbeing of the child." (Italics added.)
The meanings of the words "custody," "place," and "placement" as used in section 361.2, subdivision (a) are at issue in this appeal. "We begin by examining the words of the [statute]; if the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs." (People v. Walker (2002) 29 Cal.4th 577, 581, 128 Cal.Rptr.2d 75, 59 P.3d 150.) The terms "custody," "place," and "placement" are not defined in the Welfare and Institutions Code. However, the ambiguity in the meaning of the words is demonstrated by the arguments presented in this case. Father believes that the term "custody" in section 361.2, subdivision (a) means sole legal and physical custody; the Agency believes it means temporary physical custody. Similarly, Father implies that the terms "place" and "placement" mean that sole legal and physical custody is to be given to the requesting nonoffending noncustodial parent, while the Agency takes the position that the words refer to granting that parent temporary physical custody only.
Because the language of the statute is ambiguous, we must determine its meaning and scope. (Torres v. Parkhouse Tire Service, Inc. (2001) 26 Cal.4th 995, 1004, 111 Cal.Rptr.2d 564, 30 P.3d 57.) In doing so, we may look to "extrinsic sources, including the ostensible objects to be achieved.... In such situations, we strive to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purposes. We will avoid any interpretation that would lead to absurd consequences.' [Citation]." (People v. Walker, supra, 29 Cal.4th at p. 581, 128 Cal.Rptr.2d 75, 59 P.3d 150.) In the end, we "`must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (Torres v. Parkhouse Tire Service, Inc., supra, 26 Cal.4th at p. 1003, 111 Cal.Rptr.2d 564, 30 P.3d 57.) We bear in mind that we should give meaning to every word of the statute if possible and avoid a construction that would render any word surplusage. (Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 22, 56 Cal.Rptr.2d 706, 923 P.2d 1.)
When different terms are used in parts of the same statutory scheme, they are presumed to have different meanings. (Smith v. Rae-Venter Law Group (2002) 29 Cal.4th 345, 364, 127 Cal.Rptr.2d 516, 58 P.3d 367.) In section 361.2, subdivision (a), the Legislature used the term "custody" *620 when describing what the nonoffending noncustodial parent seeks, but used the words "place" and "placement" when describing what the court should do if it determines there would be no detriment to the child. We presume the Legislature intended the word "custody" to have a different meaning from the words "place" and "placement."
In determining what the Legislature meant by "custody," "placement," and "place," we look to the Welfare and Institutions Code, the Family Code, the California Code of Regulations, and Black's Law Dictionary. The Family Code does not define "custody," but does define joint custody, joint legal custody, joint physical custody, sole legal custody, and sole physical custody. (Fam.Code, §§ 3002, 3003, 3004, 3006, 3007.) Each definition describes the right of a parent to have physical possession of and/or the right to make decisions about the child. Implicit in the definitions is that the parent has the right to exclude all others when making decisions pertaining to his or her child. Similarly, the California Code of Regulations states that a custody determination means "a judgment, the decree or order of a court providing for the custody of a child." (Cal.Code Regs., tit. 22, § 110184.) Black's Law Dictionary (7th ed.1999) page 390, column 1 defines custody as "2. The care, control, and maintenance of a child awarded by a court" and states "custody" is also a synonym for "legal custody." Custody, therefore, connotes that the parent has the right to make decisions pertaining to the child, and has legal possession of the child. Accordingly, when section 361.2, subdivision (a) refers to a parent's request for "custody," it means the parent is asking for the exclusive right to control decisions about the child and to have possession of the child  i.e., the parent is seeking sole legal and physical custody.
"Placement" is defined in California Code of Regulations as "the placement of a child in out-of-home care as a result of a child being declared a dependent child of the court under Welfare and Institutions Code section 300." (Cal.Code Regs., tit. 22, § 119069.) The Welfare and Institutions Code uses the term "placement" in the statutes that address where the child shall live during the dependency proceeding. (See §§ 361.21 [placement of minor in out-of-state group home]; 361.3 [request for placement with relative]; 361.4 [requirements for placing a child in a relative's home]; 362.2 [placement out-of-home]; 362.7 [evaluation of home for placement with a nonrelative extended family member].) Thus, the words "place" and "placement" in section 361.2, subdivision (a) connote a temporary arrangement that necessarily involves the ongoing supervision of the juvenile court.
Our conclusions are bolstered by an examination of the statutory scheme. Father's interpretation of section 361.2, subdivision (a) would render meaningless section 361.2, subdivision (b), which governs the court's action after it places a child with a nonoffending noncustodial parent. Section 361.2, subdivision (b) provides that once the court places a child with the nonoffending noncustodial parent under section 361.2, subdivision (a), it has two options: (1) grant sole legal and physical custody to the nonoffending noncustodial parent and terminate jurisdiction, or (2) grant "custody" to the nonoffending noncustodial parent, but continue its jurisdiction and provide reunification services to either the offending parent, the nonoffending parent, or both parents.[2]
*621 In examining section 361.2, subdivisions (a) and (b), it is clear that the Legislature envisioned a two-step process: under subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under subdivision (b), the court decides whether that placement should be permanent and whether the court's jurisdiction should be terminated. Father's interpretation of subdivision (a), would leave the court with no jurisdiction over the child and thus no ability to consider section 361.2, subdivision (b), rendering the latter subdivision meaningless.
Father's interpretation would also render meaningless the sixth paragraph of section 366.21, subdivision (e). That paragraph provides that "if the child had been placed under court supervision with the previously noncustodial parent pursuant to Section 361.2, the court shall determine whether supervision is still necessary. The court may terminate supervision and transfer permanent custody to that parent," as provided for by section 361.2, subdivision (b)(1). (§ 366.21, subd. (e).) If we were to adopt Father's construction of section 361.2, subdivision (a), then that paragraph of section 366.21, subdivision (e) would serve no purpose because the parent would already have permanent custody, and the court would have no jurisdiction.
Father argues that if a parent is granted only temporary placement under section 361.2, subdivision (a), section 361.2, subdivision (e)(1) is redundant. Section 361.2, subdivision (e) provides that when the court orders removal of a child pursuant to section 361, "the court shall order the care, custody, control, and conduct of the child to be under the supervision of a social worker." The social worker has eight possible placement options, including the home of the noncustodial parent as described in section 361.2, subdivision (a). (§ 361.2, subd. (e)(1)-(8).) Father argues that under the Agency's interpretation of section 361.2, subdivision (a), the Legislature provided for "placement" with that parent twice, and that this could not have been the Legislature's intent. We disagree with Father's analysis.
Under section 361.2, subdivision (a), the court must first consider whether there is a nonoffending noncustodial parent who desires to assume custody of the child. Once the court makes that determination, it then considers whether placement with that parent would be detrimental to the child. If no detriment exists, the court orders placement of the child with that parent. (§ 361.2, subd.(a).) However, the court does not have the ability to physically place a child; it can order only that the child be placed by whomever has physical custody over the child. (See In re Robert A. (1992) 4 Cal.App.4th 174, 189, 5 Cal.Rptr.2d 438.) Consequently, to effectuate the placement as directed by subdivision (a), the court must grant custody of the child to the Agency and then order that the Agency place the child with the nonoffending noncustodial parent. Section 361.2, subdivision (e) is the statutory authority that allows the court to grant custody to the Agency. Section 361.2, subdivision (e)(1) provides the statutory authority for the Agency to carry out the court's order to place the child with the nonoffending noncustodial parent, and gives effect to the Legislative preference for placement with that parent as set forth in section 361.2, subdivision *622 (a). Thus, subdivisions (a) and (e) are not redundant.[3]
Father relies on In re Catherine H. (2002) 102 Cal.App.4th 1284, 126 Cal.Rptr.2d 342, for the proposition that a nonoffending noncustodial parent who desires custody is presumptively entitled to it. The court in In re Catherine H. did state "the noncustodial parent is presumptively entitled to custody," when a request is made under section 361.2, subdivision (a). (In re Catherine H., supra, 102 Cal.App.4th at p. 1292, 126 Cal.Rptr.2d 342.) However, that court used the terms "custody" and "placement" interchangeably, to refer at times to the parent's request for the child's placement but at other times to the parent's request for custody, without distinguishing between the two terms. (Id. at pp. 1290-1294, 126 Cal.Rptr.2d 342.) In any event, the issue before the court in In re Catherine H. was whether a noncustodial parent whose child was in a guardianship had the right to a contested disposition hearing after a juvenile court removed the child from the guardian without terminating the guardianship. (Id. at pp. 1286, 1288, 1294-1295, 126 Cal.Rptr.2d 342.) Because the court did not address the question presented here, any statement as to the parent's right to "custody" is dictum.[4]
The other cases relied on by Father are equally unavailing. In In re Jeannette S. (1979) 94 Cal.App.3d 52, 60-61, 156 Cal.Rptr. 262, the appellate court held that insufficient evidence supported the order removing the child from parental custody under section 361, in part because the juvenile court could have placed the child with her father. However, the opinion does not state that the father made a request under section 361.2, subdivision (a) for custody of the child and the court did not analyze the statutory language at issue in this case. In In re Danielle M. (1989) 215 Cal.App.3d 1267, 1270, 266 Cal.Rptr. 352, the issue was whether placement with the father would be detrimental to the children, not whether jurisdiction should have been terminated. In re Rosalinda C. (1993) 16 Cal.App.4th 273, 274, 20 Cal.Rptr.2d 58 is irrelevant since the issue in that case was whether the court may dismiss a dependency proceeding after ordering long-term foster care as a permanent plan. In re Jamie M. (1982) 134 Cal.App.3d 530, 535, 184 Cal.Rptr. 778, is similarly irrelevant because it addressed whether there was sufficient evidence to support removal from parental custody, and did not address section 361.2.
Father also relies on In re Sarah M. (1991) 233 Cal.App.3d 1486, 285 Cal.Rptr. 374 (disapproved of on other grounds by In re Chantal S. (1996) 13 Cal.4th 196, 204, 51 Cal.Rptr.2d 866, 913 P.2d 1075). The issue in In re Sarah M. was whether the juvenile court should have placed the minor with the nonoffending noncustodial parent and terminated jurisdiction without holding a hearing. (In re Sarah M., supra, 233 Cal.App.3d at pp. 1495-1496, 285 Cal.Rptr. 374.) The appellate court held that before terminating its jurisdiction, the juvenile court must make a factual finding that supervision is no longer necessary  i.e., after the court assesses detriment and concludes none exists, it must decide whether there is a need for continuing supervision. (Id. at p. 1498, 285 Cal.Rptr. 374.) Thus, this case supports the proposition that the court may not immediately terminate jurisdiction *623 even in the absence of a finding of detriment.
Here, substantial evidence showed a need for continuing supervision. The Agency felt it should monitor Austin's transition into Father's home, in view of their sporadic contact over the past 10 years. The court also wanted to monitor the conflict among the adults and ensure that Austin would not be blamed for the dependency. In addition, the social worker believed Austin needed both individual therapy and conjoint therapy with each parent, which would occur only if the matter remained open. The social worker was also concerned that Father and Rachel were aware that Austin had been physically abused and neglected by Mother, but had not taken steps to protect him. Without continuing jurisdiction, the social worker could not ensure that Austin would be adequately protected while in the care of Father and Rachel. Further, the social worker was concerned about the relationship between Mother and Rachel, and Father and Rachel were anxious about having to be in contact with Mother and coping with her erratic behavior.
The social worker also recommended continuing jurisdiction because even though Austin was happy living with Father, Mother was the only parental figure he had ever known. He was more bonded with Mother than with Father and he wanted to reunify with her. Although Austin was usually stoic, every time the social worker spoke with him, he cried and said he wanted to be with Mother. Additionally, Mother had been making good progress with her reunification plan.
Father asserts the court erred in considering any of this information because it was not relevant to the question whether Austin would suffer detriment if he were placed with Father. However, section 361.2, subdivision (a) requires that the court consider detriment before it determines whether a child will be placed with a nonoffending noncustodial parent. The court here found there would be no detriment if Austin were temporarily placed with Father and Rachel. Since it did so, it properly turned to the question whether ongoing supervision was necessary. (In re Sarah M., supra, 233 Cal.App.3d at p. 1498, 285 Cal.Rptr. 374.) The factors discussed above were relevant to that analysis.
In summary, when a nonoffending noncustodial parent requests custody under section 361.2, subdivision (a), he or she is requesting sole legal and physical custody of a child. However, the court may not immediately grant that parent sole legal and physical custody. The court must first determine whether it would be detrimental to the child to temporarily place the child in that parent's physical custody. If there is no showing of detriment, the court must order the Agency to temporarily place the child with the nonoffending noncustodial parent. The court then decides whether there is a need for ongoing supervision. If there is no such need, the court terminates jurisdiction and grants that parent sole legal and physical custody. If there is a need for ongoing supervision, the court is to continue its jurisdiction. Here, for the reasons set forth above, the court properly decided that there was a need for continued court supervision. Father has not established that the court abused its discretion by continuing its jurisdiction over Austin.

DISPOSITION
The order is affirmed.
WE CONCUR: HALLER, Acting P.J., and McDONALD, J.
NOTES
[1] All statutory references are to the Welfare and Institutions Code, unless otherwise specified.
[2] The Legislature did not define what it meant by "custody" in section 361.2, subdivision (b)(2). However, in the context of that subdivision, the term "custody" necessarily means "placement," i.e. temporary physical custody, because the court is continuing its jurisdiction over the child. We note that the term "custody" is not used in a consistent manner throughout this statutory scheme.
[3] We are not troubled by the fact that section 361.2, subdivision (e) follows subdivision (a). "A later clause or provision may qualify an earlier one and the converse is equally true." (1A Sutherland, Statutory Construction (6th ed.2002) § 20:7, p. 130.)
[4] To the extent that In re Catherine H. held that a parent is automatically entitled to sole and legal physical custody of a child after making a request under section 361.2, subdivision (a), if no detriment is found, we disagree with it.