Filed 8/18/15  In re Eric A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ERIC A., et al., Persons Coming Under the Juvenile Court Law. | D067898 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. RAUL A., Defendant and Appellant. | (Super. Ct. No. NJ15000 D,E) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Reversed in part and remanded with directions.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Raul A. appeals following the dispositional hearing in the juvenile dependency case of his son, Eric A., and his daughter, A.A. (together, the children). Raul contends there is not substantial evidence supporting the court's finding it would be detrimental to the children to be placed with Raul in Oklahoma and the court abused its discretion by denying his request for a continuance of the dispositional hearing. Respondent the San Diego County Health and Human Services Agency (the Agency) concedes the first point. We accept the concession.

BACKGROUND

In November 2014, the Agency filed dependency petitions for seven-year-old Eric and five-year-old A.A. Together, the petitions alleged the following. The children's mother, M.R., had custody. She had been chronically homeless and admitted suffering from anxiety and depression. She used amphetamines and subjected the children to an unsafe living environment. In May, A.A. was stuck by a syringe in the hotel room where they resided. M.R. refused to participate in voluntary services.

At the time the petitions were filed, Raul's whereabouts were unknown. At the detention hearing, the court ordered the Agency to search for Raul. The children were detained in the home of a maternal uncle, where they had been living since June 2014. Also living in the home were the children's three older half-siblings (the half-siblings), M.R.'s children. The children were bonded with their half-siblings and preferred not to be separated from them.

By early December 2014, the Agency had found Raul. He was living in Oklahoma with his three children, aged eight to 17, from another relationship. Raul

2

acknowledged he had a criminal history, including crimes involving violence and substance abuse.[1]  He had stopped using methamphetamine when he moved to Oklahoma several years earlier.  He had left M.R. due to her methamphetamine use.  He said the children needed stability, which M.R. was unable to provide, and believed they should be placed with him in Oklahoma.  He did not feel comfortable being in San Diego County because of the life of drugs and crime he had left behind.  Raul also asked for visitation with the children and said he would like the half-siblings to live with him.  The half-siblings viewed Raul as their father.

The maternal uncle told the Agency that Raul had "always been involved with . . . the children" and sent them money, gifts, school supplies and other necessities.  M.R. did not allow Raul to visit the children.  When asked why Raul had not come to California to see the children, the maternal uncle replied that Raul had remarried, had other children to care for, knew M.R. was violent and did "not want to get in the middle of a gang-related incident."

In December 2014, the Agency reported that Raul had a child welfare history consisting of four referrals between 2009 and 2012 in Oklahoma.  At the time of the first three referrals, he was living with M.R.  The first referral, for neglect of Raul's two-year-old child from a prior relationship, was unsubstantiated; the investigating social worker concluded that Raul "had been diligent in getting medical care for the child."  There is no information in the record concerning the second referral, except that "no investigation

---

[1]    Raul said his last arrest was in 2004.  According to information obtained by the Agency, Raul's criminal history spanned the years 2002 to 2007.

3

was done." The third referral alleged Raul "gets drunk two or three times a week and one time[] when he was drunk he became very angry and gave the finger to someone and threw a knife at the wall." During the investigation, M.R. denied the allegations but admitted her relationship with the father of the half-siblings had been violent. The investigation was closed as unsubstantiated. The fourth referral alleged Raul had left the home and was no longer living with the family. M.R. behaved in a "crazy and erratic" manner, used drugs and left the children in the care of gang members. The investigation was closed as unsubstantiated.

In December 2014, the Agency also reported that Eric was attending family therapy and A.A. had "severe dental caries". When detained, A.A. had exhibited aggressive behavior, but was no longer doing so.

In February 2015, Raul said it was okay for the children to stay with the maternal uncle; he wanted them to finish school and then visit him in Oklahoma for as long as possible. He said he would cooperate with the Agency and would "take care of [the children] no matter what." When asked whether he wished the children to come live with him in Oklahoma even if they did not want to, Raul replied that whatever the Agency did was okay and "I'm sure they will come to me eventually." Raul acknowledged the children were safe with the maternal uncle and said he would not "fight him over the kids." Raul spoke to the children regularly by telephone. At some point, he had been aware of the neglect the children had suffered in M.R.'s care and had "hop[ed] the

4

government [w]ould see that [M.R. was] crazy."[2] He had not come to San Diego to claim the children, believing M.R. would not let him have the children and he might go to jail if he "just came and got them."

In February 2015, the maternal uncle told the Agency that he had moved with the children to the maternal grandmother's home. The Agency requested an evaluation of Raul's home pursuant to the Interstate Compact on the Placement of Children (ICPC) (Fam. Code, § 7900 et seq.).

The jurisdictional and dispositional hearing took place in March 2015. The court made true findings on the petitions, declared the children dependents, ordered them removed from M.R.'s custody, found it would be detrimental to the children to be placed with Raul and ordered the children placed with a relative. The court ordered reunification services for Raul and M.R. For Raul, the court authorized unsupervised visitation in Oklahoma during school breaks and unsupervised visits in San Diego and gave the Agency discretion to arrange a 60-day visit with the concurrence of the children's counsel. The court set a special hearing concerning progress on the ICPC and visitation.

The Agency requests judicial notice of minute orders from a July 27, 2015, special hearing, set by the Agency to request that the children be placed with Raul. At the

---

[2]    The record does not disclose when Raul became aware of the neglect or the timing and nature of the neglect to which he referred. The Agency had a voluntary services case in place for M.R. during the six months before the petitions were filed.

5

special hearing, the court set a contested hearing on the issue for August 19, 2015.  We grant the request for judicial notice.

DISCUSSION

"When a court orders removal of a child pursuant to [Welfare and Institutions Code[3]] Section 361, the court shall first determine whether there is a [noncustodial] parent . . . who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subd (a).)  Section 361.2, subdivision (a) evidences "the Legislative preference for placement with [the noncustodial] parent."  (*In re Austin P*. (2004) 118 Cal.App.4th 1124, 1132.)

In the juvenile court, the Agency must prove detriment by clear and convincing evidence.  (*In re Luke M*. (2003) 107 Cal.App.4th 1412, 1426.)  On appeal, we apply the substantial evidence standard of review.  (*Ibid*.)

Here, the court cited the following reasons for finding detriment.  First, Raul acknowledged being "aware of what the children were going through [with M.R.];" he had experience "with the authorities in Oklahoma;" and "[h]e could have tried to access some help with them in order to get some information to the State of California."  Second, Raul "had a working relationship and a good relationship with the relatives" and he could have asked them for an update and "use[d] them in partnership to protect the

---

3       Further statutory references are to the Welfare and Institutions Code.

children."  Third, the proximity and support of the half-siblings was "very important to [the children's] continued emotional development and recovery" from "the life circumstances created by [M.R.]."  Fourth, it was "incumbent [on Raul] to have [a] much more detailed plan of where the children will be attending school [and] how they will be maintaining their relationship with their siblings . . . ."

The above factors do not constitute a current risk of detriment to the children. (See *In re S.O.* (2002) 103 Cal.App.4th 453, 461.)  The first two factors relate to Raul's past inaction, not his current circumstances.  The second two factors concern the children's "emotional well-being" insofar as they relate to the children's close relationship with the half-siblings.  Those two factors do not constitute detriment to the children's "emotional well-being" (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1402-1403), however, especially in light of Raul's own relationship with the half-siblings, his willingness to take them into his home, his expressed desire not to disrupt the children's schooling and his promise to cooperate with the Agency.

In view of our conclusion that the detriment finding is not supported by substantial evidence, we need not discuss Raul's contention regarding the court's denial of a continuance.

DISPOSITION

The detriment finding is reversed. The case is remanded to the juvenile court for a further dispositional hearing based on the children's current circumstances.


                                                        HUFFMAN, Acting P. J.

WE CONCUR:


McDONALD, J.


McINTYRE, J.