Filed 4/28/16  In re Jorge D. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JORGE D., A Person Coming Under the Juvenile Court Law. | B267446 |
| | (Los Angeles County Super. Ct. No. DK10248) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff and Respondent, | |
|   v. | |
| JORGE D. (Father), | |
|     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

The juvenile court sustained a petition in which the Los Angeles County Department of Children and Family Services (DCFS or the department) alleged Jorge D., age seven, was put at risk of physical harm by Angelica Z.'s (mother's) failure to protect him from her father and brother. The juvenile court detained the minor from mother and placed him with Jorge D., Sr. (father), the noncustodial parent, pursuant to Welfare and Institutions Code sections 300, subdivisions (a) and (b), and 361.2, subdivisions (a) and (b)(3), retaining jurisdiction.[1] Father challenges the court's order declining to terminate jurisdiction after placement, contending no evidence supported continuing jurisdiction. We conclude substantial evidence supports the order, and therefore affirm.

## FACTS AND PROCEEDINGS BELOW

Mother and Jorge D. lived with mother's extended family, including her brother and father (hereafter grandfather). On April 3, 2015, the Los Angeles County Sheriff's Department, which had been surveilling grandfather for some time, obtained a warrant and searched the house, finding a loaded AK-47 rifle on the floor in grandfather's bedroom, two and a half ounces of heroin, half a gram of methamphetamines, 50 unknown narcotic pills, and 20 marijuana plants (grown by permit), all within easy access of the child. Grandfather and mother's brother were arrested for narcotics distribution.

The department detained Jorge D. and immediately released him to father, who was divorced from mother and shared legal and physical custody of the child.

There has never been any question about suitability of Jorge D.'s placement with father. Father had no criminal or child welfare history. He was steadily employed and lived in a stable living arrangement with his mother and sister. He and mother were on good terms, and he paid child support and shared custody of Jorge D. through an informal agreement. DCFS was of the opinion that father had a "strong protective capacity" and worked well with mother in "the best interest" of the child. Father had no knowledge of or involvement with mother's family's issues, and agreed to allow mother visitation.

---

[1] Unspecified section references will be to the Welfare and Institutions Code.

Father was happy to have Jorge D., and agreed to follow all court orders. There were no safety risks in the home, and father had arranged for Jorge D. to receive therapy.

There has also been no question about whether mother ever mistreated or neglected Jorge D. He had lived with mother all his life, and he missed her and wanted to return to her.

Mother was upset and confused about why Jorge D. had been removed from her. By July 2015, she had become employed, was attending parenting classes, had tested negative for drugs on several occasions, and was planning to find a home for herself and Jorge D. as soon as she could afford one. She visited the child two to three times a week, and they enjoyed their time together and shared a strong bond.

The juvenile court found jurisdiction over Jorge D. under section 300, subdivisions (a) and (b) based on mother's failure to protect him, and ordered the child placed with father. Father does not dispute this finding or the court's initial jurisdiction.[2] Father and the department both then requested that jurisdiction be terminated, but Jorge D.'s counsel asked the court to maintain jurisdiction because the child missed his mother and was "very sad." Mother's counsel requested that jurisdiction be continued so that mother could receive "enhancement" services, nonreunification services designed to assist the noncustodial parent to address issues that brought the child before the juvenile court. Counsel stated mother "needs time to move out of the current location where she previously resided with the—with her relatives. And she is actively searching for a different place to live."

The juvenile court declined to terminate jurisdiction, finding Jorge D. was "closely bonded to his mother, and mother was the primary custodial parent prior to the case coming in." The court found, "the fact that he's been primarily raised by the mother weighs heavily in terms of trying to at least have the family be in a better position with respect to addressing the issues that brought the matter before the court."

---

[2] Only father appeals. DCFS filed a letter stating it would not oppose the appeal.

3

The court ordered that family maintenance services be provided "to minor and parents"; that DCFS be provided with Jorge D.'s school records; that enhancement services be provided to mother, including individual counseling, joint counseling with Jorge D., a parenting class, drug/alcohol services with random drug testing, and housing assistance; that mother be given unmonitored visitation, with the department's discretion to liberalize visitation; that father make Jorge D. available for unannounced home calls by DCFS; and that no one take the child out of state without notifying DCFS.

Father timely appealed.

## DISCUSSION

### A.      Standard of Review

"On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.] The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) "In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

### B.      Substantial Evidence Supported Continuing Jurisdiction

Father contends no substantial evidence supported the court's retention of jurisdiction. We disagree.

"Once a section 300 petition is filed, the court first determines whether a child is a person described by section 300. If the court finds the child is such a person, it takes jurisdiction over the child. (§ 300.) The court then considers whether the child should be declared a dependent. (§§ 358, subd. (a), 360.) If the child is declared a dependent, the court considers whether he or she will be at substantial risk of harm if left in the custody of the parent. (§ 361.) If there is a substantial risk of harm, the court removes the child from parental custody. (§ 361, subd. (c)(1).) [¶] As directed by section 361.2,

4

subdivision (a) . . . the court then considers whether the child has a nonoffending noncustodial parent who wants 'custody.'" (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129.)

Once the juvenile court places a child with a nonoffending, noncustodial parent, it has three options. First, the court may order that the parent "become legal and physical custodian," order reasonable visitation by the now noncustodial parent, and terminate jurisdiction. (§ 361.2, subd. (b)(1).) Second, the court may order that the parent "assume custody" subject to the court's jurisdiction and require that home visits be conducted every three months, subject to revisiting the custody arrangement every three months. (§ 361.2, subd. (b)(2).)

Or third, the court may order that the parent assume custody subject to the court's "supervision." (§ 361.2, subd. (b)(3).) "In that case the court may order that reunification services be provided to the parent . . . from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child." (*Ibid.*)[3] Thus, if the court chooses the third option, in

---

[3] Subdivision (b) of section 361.2 sets forth the juvenile court's three options:

"If the court places the child with [the nonoffending, noncustodial] parent it may do any of the following:

"(1) Order that the parent become legal and physical custodian of the child. The court may also provide reasonable visitation by the noncustodial parent. The court shall then terminate its jurisdiction over the child. The custody order shall continue unless modified by a subsequent order of the superior court. The order of the juvenile court shall be filed in any domestic relation proceeding between the parents.

"(2) Order that the parent assume custody subject to the jurisdiction of the juvenile court and require that a home visit be conducted within three months. In determining whether to take the action described in this paragraph, the court shall consider any concerns that have been raised by the child's current caregiver regarding the parent.

addition to supervisory orders it may order reunification services for either or both parents and conduct review hearings pursuant to section 366, i.e., at least every six months, to determine which shall have custody.

Here, the juvenile court chose the third option, made various supervisory orders, and ordered that services be provided to mother. The court and parties termed these nonreunification "enhancement" services, but their obvious purposes was to help mother develop the ability to regain custody of Jorge D.

Substantial evidence showed a need for continuing supervision of mother—she had failed to protect Jorge D. from risks posed by her brother and father, both suspected narcotics traffickers who kept drugs and a loaded gun in the house that were easily accessible by children, and she was not yet independent of the two men.

Substantial evidence also showed that placement with father need not be permanent. Mother never directly abused or neglected Jorge D. She participated in a parenting program and tested clean for drugs. She was working to become independent of her brother and father. And she and Jorge D. shared a strong bond, as he had lived with her all his life and wanted to return to her. Should she succeed in attaining independence and otherwise become reasonably proficient in her personal life and parenting skills, there would be no further need for removal. The juvenile court therefore

---

After the social worker conducts the home visit and files his or her report with the court, the court may then take the action described in paragraph (1), (3), or this paragraph. However, nothing in this paragraph shall be interpreted to imply that the court is required to take the action described in this paragraph as a prerequisite to the court taking the action described in either paragraph (1) or (3).

"(3) Order that the parent assume custody subject to the supervision of the juvenile court. In that case the court may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child."

6

reasonably ordered that she receive services to further these goals and that Jorge D. remain with father in the meantime.

Father argues there has never been any concern regarding his ability to care for Jorge D. or work well with mother regarding visitation and preservation of the family. We agree.

Father goes on to argue that when there are no issues of concern of his ability to care for the child, "Section 361.2 contemplates" that the juvenile court expeditiously terminate jurisdiction.

The argument is without merit. Subdivision (b)(*2*) of section 361.2 contemplates expeditious resolution of custody issues, as it provides for a three-month review of the custody arrangement. But here, Jorge D. was placed under subdivision (b)(*3*) of section 361.2, which provides for extension of services to the offending parent and a *six*-month review period, even when there are no issues of concern regarding the noncustodial parent.

Father argues that under section 361.2, continued jurisdiction should be determined based on the nonoffending parent's circumstances, not those of the offending parent. The argument is incorrect, as subdivision (b)(3) of section 361.2 authorizes the juvenile court to order services only for the offending parent, if it so chooses, and to decide whether that parent should regain custody. The statute thus authorizes the court to focus on the offending parent when determining custody issues, a focus that requires ongoing jurisdiction.

Father argues mother's interest in the future custody of Jorge D. could be heard in family court. Perhaps so. But subdivision (b)(3) of section 361.2 also addresses that interest expressly by providing that "the court shall determine, at review hearings, . . . which parent, if either, shall have custody of the child." The juvenile court was well within its discretion to choose this statutorily authorized course over another course.

7

**DISPOSITION**

The orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED

                                    CHANEY, J.

We concur:

ROTHSCHILD, P. J.

LUI, J.