Filed 9/10/20  In re A.C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | |
| SAN MATEO COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. T.C., Defendant and Appellant. | A159351 (San Mateo County Super. Ct. No. 17JD0799) |

This juvenile dependency appeal is before us for the second time.  T.C. (father) challenges the juvenile court's exit order pursuant to Welfare and Institutions Code section 362.4 granting him one hour of supervised visitation every six months with his 15-year-old daughter, A.C.[1]

The juvenile court issued the challenged order on remand after this court, in a prior nonpublished opinion, reversed a visitation order that improperly delegated to A.C. or her therapist the authority to decide whether or not to have any visitation with father.  (*In re A.C.* (July 29, 2019, A154176) at pp. 15–16 (*A.C. I*).)  In this prior opinion, we also affirmed the juvenile

_____

[1] Unless otherwise stated, all statutory citations below are to the Welfare and Institutions Code.

court's dispositional findings and orders that (1) sustained multiple allegations of sexual, physical and emotional abuse of A.C. by father; (2) placed A.C. in the sole physical and legal custody of her mother; and (3) terminated the court's dependency jurisdiction. (*Id.* at pp. 11–12.)

In the present appeal, father contends the juvenile court's refashioned visitation order is an abuse of discretion and contrary to our holding in *A.C. I.* For reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the name of judicial efficiency, we limit our recitation of the facts to those relevant to the present appeal. A more complete statement of the procedural and factual background of this matter may be found in our previous opinion. (*A.C. I*, *supra*, A154176, at pp. 2–10.)

In *A.C. I*, we upheld the juvenile court's findings that A.C., then age 13, came under section 300, subdivision (b)(1), because father: (1) inappropriately touched or attempted to touch A.C.'s breasts over her clothing on three occasions between October 2016 and July 2017; (2) stared at A.C. while she was changing her clothing over her protestations; (3) made inappropriate sexualized comments regarding A.C.'s legs and breasts; (4) threw A.C. to the ground and then grabbed and lifted her by her face; and (5) threatened to " ' "slap her butt until it turns red." ' " (*A.C. I*, *supra*, A154176, at pp. 2, 12.) We also upheld the court's finding that A.C. came under section 300, subdivision (c) because she was suffering or had suffered serious emotional damage (including fear and anxiety) as a result of father's repeated acts of sexual abuse and his aggressive and emotionally abusive behavior during his 11-year family court battle with A.C.'s mother. (*Id.* at p. 12.)

In *A.C. I*, we reversed, however, the juvenile court's visitation order, concluding that, as stated, the order improperly "le[ft] solely in A.C.'s hands the authority to decide whether to visit father."[2] (*A.C. I, supra*, A154176, at p. 14.) We therefore remanded the matter to the juvenile court with the following explanation: "As several courts—and witnesses in this case—have observed, maintaining some sort of relationship between parent and child is healthy and beneficial for both individuals. Yet, based on A.C.'s traumatic experiences as both a victim of father's abuse and a child of parents' high-conflict divorce, she more than likely will not decide on her own to visit father, at least not in the near term. . . . '(See also *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1407 [22 Cal.Rptr.2d 50] ["By not providing visitation, SSA virtually assured the erosion (and termination) of any meaningful relationship between Sheri and Brittany."].)' (*In re Julie M.* [(1999)] 69 Cal.App.4th [41,] 50.) [¶] Clearly, the juvenile court was appropriately focused here on A.C.'s best interests and 'on the elimination of conditions which led to [its] finding that [she] has suffered, or is at risk of suffering, harm specified in section 300.' [Citation.] However, the appropriate course of action is for the juvenile court to maintain this focus while crafting a visitation order that leaves the ultimate decision to grant or deny visitation under its control while delegating to the agency the authority to manage the details of such visitation." (*Id.* at pp. 14–15.)

On remand from this court, the juvenile court then held a special hearing on visitation. In anticipation of this hearing, the San Mateo County Human Services Agency (agency) filed an interim report. This report noted

---

[2] The juvenile court's visitation order of April 2018 authorized "visitation between the child and father, if and when [A.C.] is ready, and the initial visitation must be therapeutically supervised." (*A.C. I, supra*, A154176, at p. 22.)

that A.C. had "flourished in her mother's care since dismissal of [the] matter in April 2018" and that A.C. had no present interest in having contact with father "given his history of emotional abuse and sexually inappropriate behavior, and the anxiety she experiences regarding the possibility of future maltreatment if forced to interact with him." The agency recommended that "supervised visits occur once every three months, for one hour, and that these visits take place in the neutral setting of a visitation center. It is also recommended that the father pay for the cost of supervised visitation, and that there be no contact between the father and child other than at these visits."

At the January 9, 2020 hearing, father objected to the admission or consideration of the agency's report on the ground that it contained new evidence, which was improper on remittitur. The juvenile court ruled that the report would be admitted only for the purpose of providing an update on A.C.'s well-being and not for the purpose of refashioning the visitation order.

Father also argued against the agency's visitation recommendation on the ground that it "violates the spirit" of *A.C. I.* Instead, father asked for weekly therapeutic visits with A.C.

A.C. then provided a statement to the court that she was not yet ready to see father, explaining: "I . . . am scared of him and still nervous. And I still feel very uncomfortable even being close to him. And every time I write something or I think about him I begin shaking."

At the conclusion of the January 9, 2020 hearing, the juvenile court ruled as follows: "I am going to follow the recommendations of the agency, with the following modification. Instead of having visitation every three months for one hour at a time, it will be every six months for one hour at a time. [¶] This allows the child to have contact with the father and the father

4

to have contact with the child, under the supervision of the center. It presents some spacing so that both the father and child can re-evaluate what's going on in visitation. And at the next visitation they can determine whether—how that next visitation is going to go. But I think once every six months is within the spirit of the Appellate order that was remanded to this court. But it's to—and it still gives the father and child contact."

In a subsequent written order, filed January 20, 2020, the juvenile court provided four reasons for the limited supervised visitation between A.C. and father: (1) the four allegations of sexual, physical and emotional abuse were sustained in April 2018; (2) there is a history of a volatile relationship between father and A.C.; (3) A.C. "has fear and anxiety about visitation with the father"; and (4) father has been resistant to therapeutic services.

Father promptly filed a notice of appeal of the juvenile court's January 9, 2020 order.

## DISCUSSION

The sole issue before us is whether the juvenile court abused its discretion and violated our order on remand when ordering one hour of supervised visitation every six months between A.C. and father.

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. (§ 362.4; [citation].) Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court. [Citation.]"[3] (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123.)

---

[3] Section 362.4 provides in relevant part: "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and proceedings for dissolution of marriage, for nullity of marriage, or

On appeal, a juvenile court's exit order is reviewed for abuse of discretion and " 'may not [be] disturb[ed] . . . unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " ' " (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

In this case, we find nothing arbitrary, capricious or patently absurd about the juvenile court's decision to permit father to have supervised visitation with A.C. for one hour every six months. Each of the juvenile court's identified reasons (pp. 5–6, *post*) for ordering supervised visitation in this duration and frequency is well supported by the record. After a lengthy hearing, father was found to have committed multiple serious acts of abuse against A.C.—findings we then affirmed on appeal. (*A.C. I, supra*, A154176, at pp. 12–13.) The record on appeal also established the fact that father's relationship with A.C. has been characterized for years by conflict and volatility. Not surprisingly, A.C. was fearful and anxious about any visitation with father. Yet, father nonetheless continued to deny

---

for legal separation, of the minor's parents, or proceedings to establish the paternity of the minor child . . . , are pending in the superior court of any county, or an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue a protective order . . . and an order determining the custody of, or visitation with, the child. [¶] Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. The order of the juvenile court shall be filed in the [superior court] proceeding . . . at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof. [¶] If no action is filed or pending relating to the custody of the minor in the superior court of any county, the juvenile court order may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides. . . ." (§ 364.2, subds. (a)–(c).)

responsibility for the breakdown in their relationship and resisted involvement in therapeutic services.

Given these circumstances, A.C.'s statement to the court at the January 9, 2020 hearing was both positive in conveying her sense of happiness and well-being in her current placement with her mother, and yet negative in conveying the ongoing sense of discomfort and fear she experiences at the mere thought of resuming contact with father. Indeed, the court noted for the record that "in giving her statement [A.C.] was very emotional and was close to tears and was shaking. The Court could observe that."

This record supports the juvenile court's conclusion that permitting some supervised visitation—but in a very limited manner—would be in A.C.'s best interests. The court's decision not only accounted for the advice of several experts who testified at the dispositional hearing that maintaining some level of contact between parents and children is generally beneficial (*A.C. I*, *supra*, A154176, at pp. 12–14), it also accounted for A.C.'s understandable hesitancy to restart visitation given the extent of the suffering she has experienced at father's hands.

Moreover, we find father's arguments against the visitation order unpersuasive. Father contends the juvenile court's provision of "a mere two hours of visitation per year" is effectively "no visitation at all." Father also contends "the juvenile court violated the long-standing rules of child custody cases, that absent a finding of detriment, visitation should be of a frequency and duration sufficient to promote the parent child relationship. (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1128.)" (Italics omitted.) According to father, this order "virtually assured the erosion of any meaningful relationship between [he] and A.C."

7

As an initial matter, father's authority, *In re Austin P.*, *supra*, 118 Cal.App.4th 1124, is inapposite. That case holds that finding a detriment is required before a juvenile court may order a child to be placed in the temporary physical custody of someone other than the nonoffending noncustodial parent. (*Id.* at p. 1128, citing § 361.2, subd. (a).) Here, we are concerned with something quite different—an exit order pursuant to section 362.4, which is entered only after dependency jurisdiction is terminated. As we have already explained, "In devising [section 362.4] orders, 'The juvenile court has broad discretion to decide what means will best serve the child's interest . . . .' [Citation.] 'Its determination will not be reversed absent a clear abuse of that discretion.' " (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456.) For all the reasons identified above, the juvenile court acted well within the scope of its broad discretion under section 362.4 when finding that one hour of supervised visitation every six months would best serve A.C.'s interests. (*In re M.R.*, *supra*, 7 Cal.App.5th at p. 902.)

Last, the juvenile court, when crafting this visitation order, clearly anticipated the possibility that the circumstances between father and A.C. would change, for better or for worse. Thus, as pointed out at the hearing, father maintains the right to file a petition in the superior court seeking modification of this visitation order based upon a showing that circumstances have changed and that additional visitation would be in A.C.'s best interests. (See *In re Michelle M.* (1992) 8 Cal.App.4th 326, 328 ["the parties may seek relief or modification of [an exit order relating to visitation] in the superior court based on a showing of 'the best interest of the child.' (Civ. Code, §§ 4600, 4608"]; *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 518.) At this time, however, the juvenile court's order stands.

## DISPOSITION

The juvenile court order of January 9, 2020, is affirmed.

_____
Jackson, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Petrou, J.


A159351/*San Mateo County Human Services Agency v. T.C.*