Filed 12/6/23  In re S.M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | D082675 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J521226A) |
| v. | |
| K.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

MEMORANDUM OPINION[1]

In this dependency proceeding, the juvenile court placed then 16-year-old S.M. with her noncustodial parent, K.M. (Father), subject to the continued jurisdiction of the court and a postplacement home visit. (See Welf. & Inst. Code, § 361.2, subd. (b)(2).)[2] Father appeals, arguing the court abused its discretion by relying on "speculative," "amorphous," and "stale claims" to support its order. Father also contends the court did not have the authority to order a postplacement home visit because a virtual, preplacement visit had already been conducted. We conclude the juvenile court did not abuse its discretion and affirm its order.

Section 361.2, subdivision (a) expresses a preference for placing a removed child with her noncustodial parent, providing: "If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." Pursuant to section 361.2, subdivision (b), once a court decides to place a child with the noncustodial parent, it may do any of the following:

> "(1) Order that the parent become legal and physical custodian of the child. . . . The court shall then terminate its jurisdiction over the child. . . .
>
> "(2) Order that the parent assume custody subject to the jurisdiction of the juvenile court and require that a home visit be conducted within three months. In determining whether to take the action described in this paragraph, the court shall consider any concerns that have been raised by

[1] We resolve this case by memorandum opinion because it "raise[s] no substantial issues of law or fact." (Cal. Stds. Jud. Admin., § 8.1.)

[2] All further statutory references are to the Welfare and Institutions Code.

the child's current caregiver regarding the parent. After the social worker conducts the home visit and files their report with the court, the court may then take the action described in paragraph (1), (3), or this paragraph. However, this paragraph does not imply that the court is required to take the action described in this paragraph as a prerequisite to the court taking the action described in either paragraph (1) or (3).

"(3) Order that the parent assume custody subject to the supervision of the juvenile court. In that case the court may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child."

Here, the juvenile court ordered S.M., who had been removed from her mother's custody, to be placed with Father, her noncustodial parent. Although the court found placing S.M. with Father would not "be detrimental to [her] safety, protection, or physical or emotional well-being" for purposes of section 361.2, subdivision (a), the court expressed concerns about allegations by the San Diego County Health and Human Services Agency (Agency) in its reports. The court was concerned that, when S.M. and her sibling visited Father in 2020, S.M. "was engaged in fighting[ and] cursing," and S.M. and siblings smoked marijuana with Father. The court was also concerned that, on the same visit, someone came to Father's house and pointed a gun at him in S.M.'s and her sibling's presence, observing that Father had "minimize[d]" the incident. In light of these circumstances, the court exercised its discretion to retain jurisdiction over S.M. until a home visit was conducted.

3

Father asserts the juvenile court abused its discretion by declining to terminate jurisdiction. He points to his statements to the social worker in which he denies "the kids smoked marijuana with him" and explains that "the gun [was] pulled on him [by] the parents of . . . kids [S.M.] fought [with] at the park." He contends ordering a home investigation was unreasonable because "a home investigation in 2023 was not going to unearth any additional information concerning a visit in 2020." We are not persuaded.

As Father acknowledges, we review a juvenile court's decision to continue jurisdiction after placing a child with a noncustodial parent for abuse of discretion. (See *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1135.) Under this deferential standard, we find no error. Although Father denied smoking marijuana with the children, two of S.M.'s mentors told the Agency "that the father reportedly smokes marijuana with [her] and [she is] allowed to do whatever [she] want[s]" when she is with him. S.M.'s mother similarly "stated there were reported concerns that [F]ather may have been smoking marijuana with the children when they visited but that it was never confirmed." Even according to Father's own statements, the 2020 visit "did not go well," and, at minimum, involved an angry person pointing a gun at him in S.M.'s presence. According to the Agency, Father "minimiz[ed] the severity of this incident" when he was asked about it. All of the court's concerns, thus, had support in the record. Contrary to Father's suggestion, the clear purpose of ongoing supervision was not to investigate what had happened in 2020, but to ensure S.M. would be safe and healthy in her placement with Father, in light of S.M.'s and Father's reported behavior. The juvenile court's order has substantial support in the record, and we see no abuse of discretion by the court continuing its jurisdiction subject to a home visit.

Father also claims the juvenile court abused its discretion by ordering a home visit because the Agency has already conducted a virtual home visit. But Father simply assumes this virtual visit was a sufficient substitute for an in-person, postplacement visit. The juvenile court disagreed, expressly ordering an in-person visit if at all possible, stating:

> "If the Agency needs to utilize services of a sister agency [in Father's state] in order to complete that home visit, then the Agency is authorized to do so. If the Agency needs to conduct that home visit virtually after exploring the possibility of having its sister agency . . . conduct that visit, then the Agency may proceed with that virtual visit if that is the only available option to conduct that home visit.

> "The Court does, however, grant leave to counsel for [Child], as well as mother's counsel, to set a special if they believe that a virtual visit with [Child] at [Father's] residence is insufficient, and the Court will assess that issue if a special proceeding is set. The Court will at such a proceeding want to hear from the Agency about the possibility of conducting and [*sic*] in-person home visit of [Father's] residence, either by utilizing a sister agency or by some other means, and whether or not an in-person home visit is practical."

Moreover, the preplacement home visit cannot have complied with section 361.2, subdivision (b)(2), which requires the social worker to file a postvisit "report with the court" to inform the court's final placement determination. There was no home-visit report filed with the court after the (preplacement) virtual visit, only a single line in the August 2023 Addendum Report: "This virtual home visit showed no safety concerns for the father's home." The juvenile court did not abuse its discretion by ordering a home visit and report in accordance with section 361.2, subdivision (b)(2).

Father relies on dicta in *In re J.S.* (2011) 196 Cal.App.4th 1069 for his assertion the court cannot order a postcustody home visit if there was a

5

precustody home visit.  (*Id.* at p. 1078 ["As the court here recognized, [subdivision (b)] was not really available because a home visit had already been conducted."].)  We are not bound by any court's dicta.  (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1301.)  In any event, the home visit in *In re J.S.* was not a virtual visit, and, though not entirely clear from the factual background, it appears the inspecting social worker prepared a report.  (*In re J.S.,* at p. 1073.)  Accordingly, the single line in *In re J.S.* is not persuasive authority for Father's position.

## DISPOSITION

The order of the juvenile court is affirmed.


DO, Acting P. J.


WE CONCUR:

BUCHANAN, J.

KELETY, J.