Filed 10/22/21 In re M.M. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B310631 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00244D) |
| Plaintiff and Respondent, | |
| v. | |
| E.M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robin R. Kesler, Juvenile Court Referee.  Dismissed in part and affirmed in part.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court asserted jurisdiction over 13-year-old M.M. after his mother tested positive for drugs and was frequently absent from the home. The court placed M.M. with his father, E.M., continued jurisdiction, and ordered services for the father and the mother. The father alone appeals. We dismiss his challenge to jurisdiction as nonjusticiable and otherwise affirm. Statutory references are to the Welfare and Institutions Code.

I

We summarize the factual and procedural background.

A

The family has been involved with the Los Angeles County Department of Children and Family Services before. The Department investigated several referrals involving the mother's children between 2007 and 2017, all of which it deemed unfounded or inconclusive. In 2019, the Department substantiated a general neglect referral that alleged the mother was "deeply addicted" to methamphetamine. The Department found evidence of violence in the family home and of the home lacking utilities. The mother declined to drug test. The mother received voluntary family maintenance services until moving out of Los Angeles County.

On November 5, 2020, the Department received a referral alleging the mother was neglecting M.M. and his two younger half brothers, 10-year-old W.R. and five-year-old D.R. The mother and children were living with the maternal grandmother, who told the Department the mother would leave the home for

2

days without telling the maternal grandmother where she was going, return home full of energy, and then "knock[] out" the entire next day.  The grandmother reported when the mother was home she fed the children fast food, and when she was not home she did not leave enough food for the children despite receiving child support money from both fathers.  The maternal grandmother lived on a limited income and was unable to provide for the children on her own.  When questioned the following week, M.M. told the Department he had not seen the mother for two days.  The Department tried to contact the mother but initially got no response.  When a Department worker returned to the home on November 18, the mother had not been home for two weeks.

On November 19, 2020, the mother called the Department back.  She denied leaving the children for days or without food and denied any substance use.  She explained that her youngest child, five-year-old D.R., was not enrolled in kindergarten because his vaccination record was not up to date.  Almost three weeks later, she cried and admitted she still had not enrolled the youngest child in school because she felt overwhelmed with his brother W.R.'s schooling.  She told the Department case worker she felt "lost."

On December 14, 2020, the mother tested positive for amphetamine and methamphetamine at high levels.  The mother became upset when she heard the results, claimed she had never used drugs, and asked for another test.  As to the positive test result, she said, "I don't understand what happened."

The next day, the Department received a phone call from the two youngest children's father.  He said the mother did not pick up the children as planned and caused a "melt down" by

telling them she could not take them back to the maternal grandmother's home. The maternal grandmother had told the mother to move out in the hope it would "help her to realize her duties," but instead the mother appeared to move into her boyfriend's motorhome.

On December 23, 2020, the Department obtained a removal order against the mother based on her positive drug test and arranged for W.R. and D.R. to remain with their father. The maternal grandmother said she would need financial assistance for M.M. to remain in her care. M.M. went to stay with his father for the winter break.

B

We turn to the father.

Before the referral, M.M. stayed with the father one or two weekends per month. The father was "erratic" picking up M.M. for visits and had to be reminded by the maternal grandmother. The Department noted the father did not know M.M.'s grade level at school, the name of his school, or the names of his medical or dental providers.

On December 2, 2020, the father said the maternal grandmother had told him about the mother's absences. The father denied current drug use but disclosed his substance abuse history. In the past he had "tried almost every kind of drug out there." He said he stopped using drugs in 2007, participates in alcoholics anonymous meetings, and would submit to a drug test if needed. The father lived in a two-bedroom apartment with the paternal grandmother and paternal uncle. The grandmother and uncle each had a bedroom, and the father slept in the living room. A mattress leaned against the wall for M.M.'s use during visits.

At a home visit the following week, the father said he did not want to get in the middle of a "he said she said thing" between the mother and maternal grandmother. The father said he was willing to buy M.M. anything he needed and M.M. could come live with the father if M.M. wanted.

After the mother's positive drug test, the father expressed concern about the mother having access to M.M. at the maternal grandmother's home. The Department advised it was relying on the adults to be protective of M.M. while it secured a removal order. The father took M.M. home for the winter break a couple days later, and M.M. remained in his care.

The father has a criminal history of numerous arrests, as well as convictions for theft in 1997; possessing, making, or selling a dangerous weapon in 1999; and possessing a controlled substance and driving under the influence in 2007. He served time in jail and on probation.

All parties described M.M. as a quiet, mature, and well-behaved boy who tries hard in school. He described himself as self-sufficient and able to cook for himself when his mother was not home.

C

On December 29, 2020, the Department filed a petition under section 300, subdivision (b) on behalf of M.M. and his two half brothers alleging the mother was an abuser of methamphetamine and amphetamine which rendered her incapable of caring for the children. The petition further alleged the respective fathers knew or should have known of the mother's substance abuse and failed to protect their children.

At the December 31, 2020 detention hearing, the juvenile court found section 300 applied to M.M., detained him from the

mother, and released him to the father under the Department's supervision.

In response to the petition, the father alleged he had no contact with the mother. He said they had used drugs together when they were younger, but their relationship ended in 2007. As to the present, he said, "As far as I knew, she was sober." The father admitted the maternal grandmother told him the mother was becoming "unhinged." The father took no action to protect M.M. after learning this.

At the February 1, 2021 jurisdiction and disposition hearing, the Department requested the court amend the section 300 petition to remove the allegation W.R. and D.R.'s father had failed to protect them. The brothers' father demonstrated concern for the children and acted to protect them by petitioning family court for custody. The court granted the request and struck the allegation against this father.

The court heard argument from counsel. The Department argued it was "hard to believe" M.M.'s father did not know of the mother's drug use given M.M.'s weekend visits, and emphasized the father simply did not want to get between the mother and the maternal grandmother.

The father's counsel requested the court dismiss the allegations as to the father. Regarding disposition, he asked the court to close the case with an order granting him sole physical custody of M.M. The children's counsel expressed concern, noting the father had previously been noncustodial, he had been "checked out" prior to the dependency proceedings, and M.M. had continuing need of protection. The Department's counsel added the father had declined a drug test and could benefit from services because he had not previously had physical custody.

The juvenile court sustained the section 300 petition as amended and declared the three children dependents of the court. It ordered family maintenance services for the father, including two drug tests and family preservation services. The court described 13-year-old M.M. as "parentified" by taking up the mother's responsibilities while living with her.

## II

The father appeals, arguing insufficient evidence supported the juvenile court's jurisdictional finding the father failed to protect M.M. He further argues the court abused its discretion by not closing the case with an order granting him sole custody. We dismiss the first claim and otherwise affirm.

## A

An appellate court need not address jurisdictional findings involving one parent when there are unchallenged findings involving the other parent. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308–310 (*Briana V.*).) We generally view such challenges as nonjusticiable. (*Id.* at p. 308; see generally *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489–1495.)

The father challenges the court's assertion of jurisdiction based on his failure to protect M.M. from the mother's drug use and neglect. Because the court's jurisdictional findings against the mother remain unchallenged, the outcome of this appeal will not affect the court's jurisdiction over M.M. Thus we can offer no effective relief from jurisdiction, and the father's claim is nonjusticiable.

Nevertheless, an appellate court may choose to address the merits of the jurisdictional challenge where the findings serve as the basis for challenged dispositional orders, could be prejudicial to the parent, could affect current or future dependency

7

proceedings, or could have other consequences to the parent beyond jurisdiction.  (*Briana V.*, *supra*, 236 Cal.App.4th at p. 309.)

This case has none of those circumstances.  Because jurisdiction attaches to M.M., not the father, the court would have the power to impose dispositional orders based on the findings against the mother alone.  (See *In re D.M.* (2015) 242 Cal.App.4th 634, 645 [a jurisdictional finding against one parent is good against both].)

The father argues the court's assertion of jurisdiction prejudices him because he "is now considered an 'offending parent' when in fact he is a 'non-offending parent' under the Welfare and Institutions Code."  The father does not provide the section of the Welfare and Institutions Code he alleges establishes his status as a nonoffending parent.

The father speculates the jurisdictional finding against him may affect his parental rights in future dependency proceedings.  He cites section 361, subdivision (c)(1) for the rule that jurisdiction findings may establish prima facie evidence a child cannot safely remain in a parent's home.  But that rule narrowly addresses jurisdictional finding under section 300, subdivision (e) that a child under age five suffered severe physical abuse, and it applies to the home of the parent with whom the child resided at the time of injury.  (§ 361, subd. (c)(1); see also *In re G.C.* (2020) 48 Cal.App.5th 257, 276–278 (dis. opn. of Menetrez, J.) [surveying a common appellate error holding *any* jurisdictional finding may establish prima facie evidence].)  This court asserted jurisdiction over 13-year-old M.M. pursuant to section 300, subdivision (b) and removed him from the home of the mother, not the father.  In any event, the court found M.M. could safely

8

remain in his father's home and placed him there. The father's citation is inapposite.

Thus the father has not suggested any identifiable negative effect on future dependency proceedings or alleged any other adverse consequences. Accordingly, we decline to exercise our discretion to reach the merits of the father's challenge to jurisdiction and dismiss this portion of his appeal.

B

The father also challenges the disposition, arguing the juvenile court abused its discretion when it continued jurisdiction over M.M. instead of terminating the case with an order placing M.M. in the father's custody. We review custody orders for abuse of discretion. (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102.) The court has broad discretion to fashion disposition orders for the child's well-being. (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) The court did not abuse its discretion.

Section 361.2, subdivision (b) governs placement of a child with a noncustodial parent following removal under section 300. When a court orders a child placed in the custody of a formerly noncustodial parent, it may terminate jurisdiction or order custody subject to supervision. (§ 361.2, subd. (b)(1) & (3); *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1131 (*Austin P.*).)

This court chose the second route. The father's case plan was practical and limited. The court ordered him to do two things: submit to two drug tests and participate in family preservation services. The father initially said he was willing to drug test "if needed," but he had already declined one test. His criminal history included drug-related arrests and convictions. That the father did not know M.M.'s school or grade level suggested he may be unprepared to take on the full burden of

9

childcare.  The court noted M.M. was "parentified" in his previous home with the absentee mother.  It was prudent to ensure M.M. did not have to remain that way.

The court reasonably concluded the father, as a formerly noncustodial parent with a criminal history, could benefit from family preservation services in taking up new responsibilities and supporting his son.  (See § 361.2, subd. (b)(3); *Austin P.*, 118 Cal.App.4th at pp. 1134–1135.)  The court's orders were properly tailored to support the father's transition to custodial parenthood and M.M.'s transition to his father's home.  There was no abuse of discretion.

## DISPOSITION

We dismiss the father's appeal as to jurisdiction.  We otherwise affirm.


WILEY, J.



We concur:



GRIMES, Acting P. J.



STRATTON, J.